TEXARKANA & FORT SMITH RAILWAY COMPANY v. C. R. TOLIVER.

Decided December 15, 1904.

**1.—Railways—Negligence—Maintenance of Switch Yards—Injury to Switchman.**

Evidence considered and held to sustain recovery against a railway for negligence in failing to keep its yards free of obstructions and its frogs filled or blocked, as it had been its custom to do, in favor of a switchman who, in stepping from between cars after drawing a coupling pin preparatory to switching a car, stumbled over a rock and in trying to save himself from falling stepped into an open frog and was caught by the car and his leg crushed.

**2.—Contributory Negligence.**

Evidence held not to raise the issue of contributory negligence on the part of plaintiff, a switchman, in failing to change the coupling of cars from the "gooseneck" link to the automatic coupler before attempting to switch them, there being no evidence that more danger could be anticipated in uncoupling the "gooseneck" link at one place than at the other.

**3.—Requested Charge—Included in General Charge.**

There is no error in refusing a requested special charge where the issues there represented were included in the main charge.

**4.—Verdict—Amount—Personal Injury.**

A verdict for $19,500 for injuries preventing plaintiff from continuing in the occupation of switchman and greatly lessening his capacity to earn money by physical labor of any kind, held not excessive in the case of one 26 years old at the time of the injury and earning from $90 to $140 per month.

**5.—Earning Capacity.**

Plaintiff's capacity to earn money in avocations generally being necessarily affected by the loss of his leg, he was not required to show what his present earning capacity was in order for the jury to fix the amount of compensation to which he was entitled by reason of his decreased earning capacity.

**6.—Misconduct of Jury—Discharge of Juror—Waiver.**

An appellant who agreed to the discharge of a juror charged with misconduct and took his chances with eleven jurors waived any objection it might have to the conduct of such juror.

Appeal from the District Court of Jefferson. Tried below before Hon. W. H. Pope.

*Greer, Nall & Neblett,* for appellant.—1. The jury having found contrary to that portion of the court's charge which defined the care incumbent on defendant in furnishing a safe yard, the undisputed evidence showing that defendant had daily inspected the yards for all dangerous obstructions as well as defects, and promptly remedied the same, and on the morning before plaintiff's injury (which occurred at 1:30 in afternoon) had inspected the yards and found no rocks or obstructions, it was error to refuse the motion for a new trial. Morris v. Railway, 108 Fed. Rep., 749.

2. The undisputed evidence showing defendant had used all due and reasonable care in its inspection for and removal of all obstructions, the verdict of the jury is without evidence to support it; and if sustained, will hold defendant to extraordinary, not "ordinary care," and

in effect will hold it as the insurer of its employes. Railway v. Fowler, 56 Texas, 460; Railway v. Bell, 75 S. W. Rep., 6; Bonnett v. Railway, 89 Texas, 75; Texas & P. Ry. Co. v. French, 86 Texas, 98; Illinois Ry. Cent. Ry. v. Campbell, 170 Ill. 163.

3. When there is a comparitively safe and a more dangerous way known to a servant by means of which he may discharge his duty, it is negligence for him to select the more dangerous method, and he thereby assumes the risk of the injury which its use entails. Gowen v. Harley, 56 Fed. 973, 983; 6 C. C. A., 109, 200; 12 U. S. App., 574, 590; Coal Co. v. Reid, 85 Fed. 914; 29 C. C. A. 475; 57 U. S. App., 464; McCain v. Railroad Co., 76 Fed. 125, 126; 22 C. C. A. 99, 101; 40 U. S. App., 181, 184; Russell v. Tillotson, 140 Mass. 201; 4 N. E. 231; Gleason v. Railway Co., 37 Fed., 647; 19 C. C. A. 636; 43 U. S. App., 89; Cunningham v. Railway Co. (C. C.), 17 Fed. 882; English v. Railway Co. (C. C.), 24 Fed., 906; Crawford v. Railway, 89 Texas, 89; Gilbert v. Railway, 128 Fed. Rep., 529.

4. Where a servant loses his leg by reason of negligence of the master and there is no proof of the total destruction of his earning capacity, nor is there any proof as to the extent his earning power has been diminished by the injury, a verdict for nineteen thousand five hundred dollars is excessive. Railway Co. v. Redeker, 67 Texas, 482; Railway Co. v. Overheiser, 76 Texas, 437; Railway Co. v. Underwood, 64 Texas, 469.

5. Whilst it is true defendant consented after argument began that the trial might proceed with the remaining eleven jurors, on account of the misconduct of the juror, Nutt, still this was tantamount to compulsion, in that to have refused to discharge the juror would have compounded his misconduct, and under the circumstances defendant could not have refused to proceed with the trial without prejudicing its case, and thereby and therein was deprived of a fair trial by a constitutional jury. Const. of Texas, art. 5, sec. 13; Rev. Stat., art. 3228; Railway Co. v. Weller, 56 Texas, 331.

*Smith, Crawford & Sonfield,* and *Lovejoy & Malevinsky,* for appellee.—1. The uncontradicted and undisputed evidence was that the track inclined or sloped and that automatic couplers could not be adjusted without pulling them up past the switch, and there is no evidence in the record from which it could be inferred or deduced that the plaintiff was guilty of contributory negligence, in this respect. Dupree v. Alexander, 68 S. W. Rep., 742.

2. The record shows evidence reasonably sufficient to support the verdict of the jury upon the issue of negligence on the part of the defendant in maintaining an unfilled frog. The defendant was guilty of negligence in permitting a rock to remain near the track where Toliver was injured. The testimony of a majority of the witnesses goes to establish negligence on the part of the defendant in maintaining an unfilled or unblocked frog, and unusually large rock near its track. Railway v. Pitts, 42 S. W. Rep., 257; Railway v. Turner, 43 S. W. Rep., 560; Railway v. Emmery, 40 S. W. Rep., 150; Railway v. Gourley, 54 S. W. Rep., 307; Railway v. Robinson, 76 S. W. Rep., 210; Railway

v. Kelly, 8 Texas Ct. Rep., 704; Railway v. Walker, 70 Texas, 126; Railway v. Lee, 34 S. W. Rep., 160; Railway v. Bohan, 47 S. W. Rep., 1050; Railway v. Waller, 65 S. W. Rep., 211; Railway v. Hannig, 91 Texas, 350; Railway v. Bingle, 91 Texas, 288; Railway v. Darby, 67 S. W. Rep., 466; Dupree v. Alexander, 68 S. W. Rep., 739; Gen'l Electric Co. v. Murray, 7 Texas Ct. Rep., 220; Railway v. Hartnett, 75 S. W. Rep., 809; Railway v. Kelly, 8 Texas Ct. Rep., 700.

3. It is the contention of the appellee that the record does not show any evidence of contributory negligence on the part of Toliver, for the reason that the undisputed evidence shows that the track was upon an incline. That in order for the car to be pulled up on the track the goose neck coupling was necessary. That the cars could not have been stopped on account of the incline grade unless they were pulled up past the switch. Railway v. Walker, 70 Texas, 126; Railway v. Lee, 34 S. W. Rep., 160; Railway v. Bohan, 47 S. W. Rep., 1050; Railway v. Darby, 67 S. W. Rep., 446; Dupree v. Alexander, 68 S. W. Rep., 79; Gen'l Elec. Co. v. Murray, 7 Texas Ct. Rep., 220; Railway v. Hartnett, 75 S. W. Rep., 809; Ho. Elec. Co. v. Robinson, 76 S. W. Rep., 210; Ashman v. Railway Co., 51 N. W. Rep., 648; Hanna v. Railway Co., 28 N. E. Rep., 682; Beems v. Railway Co., 12 N. W. Rep., 222; Railway v. Graham, 10 So. Rep., 284; Baird v. Railway Co., 8 Am. & Eng. R. R. Cases, 128; Railway v. Nickels, 1 C. C. A., 625; 50 Fed. Rep., 718.

4. The undisputed evidence shows that the plaintiff Toliver is a young man, 26 years of age, that his earning capacity ranged from one hundred to one hundred and forty dollars per month. He has suffered the most excruciating pains, his right leg is off five inches below the hip, and the court will take judicial cognizance of the fact that a man in this condition can not follow railroading for a living. It was not necessary to plead or prove specifically the decreased earning capacity. This was a matter for the jury to pass upon in the exercise of common sense and common judgment. Elec. Co. v. Murray, 74 S. W. Rep., 52; Railway v. Johnson, 37 S. W. Rep., 771; Watson on Measure of Damages for Personal Injuries, p. 6075, sec. 492.

5. The trial court did not err in overruling defendant's motion for new trial on the ground that the verdict was excessive, because the verdict was not excessive. The evidence of plaintiff's injuries shows a condition of physical pain and mental anguish, loss of time and injury of a physical nature that would have justified a larger verdict than $19,500. In re Ehrman v. Railway Co., 14 N. Y. Supp., 336; 131 New York Ct. App., 576, the highest court in New York sustained a judgment for $25,000 for the loss of one leg of a child three and one-half years old.

In re Kalfin v. Railway, 65 N. Y. Supp., 503, a verdict for $15,941 was sustained for the loss of a leg of a boy eighteen months old.

In Railway v. Connell, 66 S. W. Rep., 208, a verdict for $16,000 was affirmed for a leg rendered practically useless.

In the Scott case, 50 S. W. Rep., 447, a verdict for $15,000 was sustained for the loss of a foot.

In Williamson v. Railway, 65 N. Y. Supp., 1054, a boy eleven years

old lost a leg, and a verdict for $22,500 was sustained. See, also, Railway v. Hines, 50 S. W. Rep., 624; Railway v. Shelton, 67 S. W. Rep., 653 ($35,000) ; Railway v. Kelly, 8 Texas Ct. Rep., 702 ($30,000).

PLEASANTS, Associate Justice.—This suit was brought by appellee against the appellant to recover damages for personal injuries alleged to have been caused by appellant's negligence. Defendant's answer contains a general denial and special pleas of contributory negligence and assumed risk. The trial in the court below by a jury resulted in a verdict and judgment in favor of plaintiff for the sum of $19,500.

Plaintiff was injured on the 29th day of March, 1902, while in the discharge of his duties as foreman of defendant's switching crew in its yards in the city of Beaumont. There were several switch tracks and one spur track in this yard. Plaintiff was engaged in moving a flat car from the spur track and placing it on one of the switch tracks. This car which had been placed on the spur track a day or two before, had run off the end of the track; that is the trucks at one end of the car were off the track and on the ground. This caused an elevation of the end of the car which remained on the track, and as a consequence when plaintiff coupled it to the car attached to the switch engine he had to use a "gooseneck" or crooked link. After making the coupling the cars were moved up the spur track and stopped on the main track above its intersection with the switch track upon which the flat car was to be placed. The switch having been adjusted so that the car when started back would go upon the proper track, plaintiff signaled the engineer to back up and stop. When the engine moved back he stepped in between the flat car and the coal car to which it was coupled and drew out the coupling pin. Just as he came out from between the cars he stumbled over a rock which was lying by the side of the track and in trying to keep from falling he stepped into an open frog which caught and held his foot until the coal car, which was moving just behind him, struck him and ran over his leg, thereby causing the injuries complained of.

Plaintiff did not know that this frog was not blocked or filled, and did not see the rock until his foot struck it. He could have seen the rock and the open frog if he had been looking for them. He had been in defendant's employment for two and a half years and was familiar with the yard. It was defendant's custom during the time plaintiff had been working for it to keep the frogs in the yard filled with dirt or blocked with wood, and to keep the yard clear of all obstructions. It was the duty of the section crew to keep the yard clear. The member of that crew to whom this duty had been assigned went over the yard at 7:30 of the day on which plaintiff was hurt, and at that time there was no rock at or near the place at which the accident occurred.

Plaintiff was injured about 1:30, and the rock over which he stumbled must have fallen from a rock train which passed through the yard some time before the accident occurred and after the yard was inspected that morning.

Plaintiff had been sick for a month preceding the accident and had

not been in the yard during that time until he returned to work three days before he was injured. When he was taken sick and quit work in the yard this frog was filled. While he was sick the track at this place had been raised and repaired, but the frog had not been refilled or blocked. Plaintiff had ridden over this track on the front of the engine a number of times during the morning of the day on which he was injured, but did not observe that the frog was not filled. He testified that he could have seen the condition of the frog when he passed over the track if he had been looking down, but his attention was directed to his work and he had no occasion to look at the track as he passed over it.

The flat car and the coal car to which it was coupled were both equipped with automatic couplers and their appliances were in good order. The position of the car upon the spur track, as before explained, prevented the use of the automatic couplers in the first instance.

Plaintiff testified that he did not remove the "gooseneck" and couple the cars with the automatic couplers after he had pulled the flat car back on the track and before he attempted to kick it onto the switch track, because the track was down grade and the brake on the flat car was defective and would not hold the car, and therefore it could not have been coupled automatically.

At the time of his injury plaintiff was 26 years old and was earning from $90 to $140 per month. His leg was so badly crushed as to require its amputation a few inches below the hip joint. The car which ran over him pressed his leg into the frog between the rails so that it could not be extricated until the rails were taken from the track, and this required about an hour's time. During this time plaintiff suffered the most intense pain. He continued to suffer much mental and physical pain for some weeks, and still at times suffers from his injury, though his general health is now good.

We think this evidence sustains the finding of the jury that appellee was injured through the negligence of appellant in failing to have its yard clear of obstructions and in allowing the frog in which his foot was caught to be unfilled without notifying him of its condition, and that appellee was not guilty of any negligence which contributed to his injury and did not assume the risk incident to the use of the premises in its unsafe condition. This conclusion of fact disposes of the question raised by appellant's second and third assignments of error.

The first assignment complains of the refusal of the trial court to give the jury the following special instruction requested by appellant:

"If you believe from the evidence that plaintiff could with safety have stopped the cars and removed the 'gooseneck' or crooked link pin at some other place than where he attempted to cut the cars loose, but that he gave the kick-back signal at the time or before the pin was removed at an unsafe place, you will consider this fact in determining whether the same contributed to his own injury. If it did, and he could have avoided same 'by the exercise of reasonable care,' as the same is defined in the general charge, you will find for the defendant."

The defendant's answer charged the plaintiff with contributory negligence in failing to remove the "gooseneck" and adjust the automatic

coupler before he attempted to "kick" the flat car on to the switch track. We do not think the evidence raises the issue of contributory negligence because of appellee's failure to remove the "gooseneck" and adjust the automatic couplers at some other place in the yard than that at which he uncoupled the cars. The undisputed evidence shows that it was necessary to use the "gooseneck" to make the coupling in the first instance and there is no evidence that the cars could have been uncoupled and the "gooseneck" removed at any place in appellant's yard with more safety than the place at which appellee uncoupled them, if the appellant had not negligently permitted the rock to remain near the track and the frog to be left open, which negligence was unknown to appellee.

The charge given the jury by the court contains the following instruction:

"If you believe from the evidence that the plaintiff was guilty of contributory negligence in not taking out the 'gooseneck' coupling and readjusting the automatic coupling, before pulling the cars up past the switch, as he did do, then your verdict should be in favor of the defendant. Or if you believe from the evidence that he was guilty of contributory negligence in going between the cars to uncouple them at the time that he did, your verdict should be in favor of the defendant. Or if you believe from the evidence that the plaintiff was guilty of contributory negligence in allowing the 'gooseneck' bar or pin coupler to remain attached to the car, which he was seeking to move, during the time that he moved the said car from said spur track, then your verdict should be in favor of the defendant."

This charge properly submits to the jury the issue of contributory negligence upon the part of appellee in going between the cars to uncouple them, and also submits the very issue presented in the requested instruction. If, therefore, it be conceded that the requested charge was correct in its application of the law to the facts in evidence, it should not have been given, for the reason that the issue presented was included in the court's main charge to the jury.

The fourth assignment of error assails the verdict of the jury on the ground that it is so excessive in amount that it shows the jury were influenced by passion or prejudice.

While the verdict is a large one we find nothing in the record to indicate that in fixing the amount the jury acted from any improper motive. Such being the case we are not authorized to substitute our judgment as to what would be a fair compensation for the injury sustained by appellee for that of the jury. The law leaves it to the jury to fix the compensation in all cases of this character, and unless the amount found by them is so unreasonable as to justify the conclusion that they were improperly influenced their verdict should not be disturbed. Missouri P. Ry. Co. v. Lehmberg, 75 Texas, 67; Missouri, K. & T. Ry. Co. v. Hannig, 91 Texas, 347; Railway Co. v. Elkins, 54 S. W. Rep., 931.

The nature of appellee's injury is such as will necessarily prevent him from continuing in the business in which he was engaged at the time he was injured and will greatly lessen his capacity to earn money by

physical labor of any kind. His capacity to earn money in avocations generally being necessarily affected by the loss of his leg, he was not required to show what his present earning capacity was in order for the jury to fix the amount of compensation to which he was entitled by reason of his decreased capacity to earn money, but the amount could be determined by the jury from their common knowledge and experience and sense of justice. Missouri, K. & T. Ry. Co. v. Johnson, 37 S. W. Rep., 771.

The fifth assignment predicates error on the refusal of the trial court to grant appellant a new trial because of alleged misconduct on the part of the jury.

The facts upon which this assignment is based are as follows: The trial of the case in the court below consumed several days and the jury were not kept together when court was not in session. On the second or third day of the trial, when the court adjourned in the evening, J. L. Nutt, one of the jurors impaneled in the case, was seen to get in a buggy and ride away from the courthouse with appellee. Counsel for appellant called the attention of appellee's attorneys to this action of the juror. When the court met the next morning appellee's counsel proposed to appellant's counsel that this juror be excused and that they proceed with the trial of the case with eleven jurors. This was agreed to by appellant's counsel and the juror was discharged. The alleged misconduct for which the verdict of the jury is sought to be set aside is set out in the affidavits of W. H. Randall and J. E. Wilcox, which were attached to a motion for new trial. Randall's affidavit is in substance as follows:

That he was a witness in the trial of cause No. 3320, styled C. R. Toliver v. Texarkana & Fort Smith Railway Company, which trial was had in the latter part of January, 1904, in the District Court of Jefferson County, Texas, before the Hon. W. H. Pope, judge of the Fifty-eighth Judicial District, that at the noon hour of adjournment, or recess, on Thursday, the last day that the witnesses were held under the rule, affiant was passing by the new public school building which is being constructed in Beaumont, and was stopped by one Riley, whose Christian name and initials are to affiant unknown, when the following conversation occurred, towit:

"He stopped me and asked me what I was doing up here. I told him that I was a witness in a suit. He then asked me if it was the Toliver case; he asked me how it was getting along, how it was going to come out. I told him that I didn't know, as I was not allowed in the courtroom, and was under rule and was not allowed to talk about it. He said that Toliver was all right; that he had been talking to one of the jurors who was a personal friend of his, a carpenter, who said that he would get a good big judgment, $15,000 or $20,000. In answer to that I told him I couldn't say what he would get, or anything about it." This conversation was had before the court charged the jury.

This affiant further states that on said date, towit, Thursday, the 21st day of January, 1904, he was passing by the plaintiff's place of business, towit, the saloon of C. R. Toliver, and as he passed by he saw one of the jurors, whose name he remembers as Blanchette (a young

man between 25 and 30 years of age, with curly hair), in said saloon in the act of using the telephone. Affiant did not see the said juror engaged in conversation with appellee nor hear him make any statements in regard to the case. All he knows is that he saw the said juror in plaintiff's saloon as above stated.

The facts sworn to by the witness J. C. Wilcox were in substance as follows:

That he is a resident citizen of Jefferson County, said State, and that he is more than 21 years of age, and has no interest whatever in the above styled and numbered cause; that while said cause was on trial during the present term of the District Court of Jefferson County, and after the jury had been impaneled and after a portion of the evidence had been introduced, and on or about the 21st day of January, 1904, while said trial was in progress, he, affiant, was in the saloon of the plaintiff, Charlie Toliver, in the city of Beaumont, with one of the jurors who had been chosen to try this case, and that affiant and said juror, whose name is—Nutt, were invited by the plaintiff, Charlie Toliver, proprietor of said saloon, to take a drink with him, Toliver, which they did; that affiant drank beer at said time and the plaintiff, Charlie Toliver, and said juror, Nutt, drank whisky; and that after plaintiff and said juror Nutt had finished drinking, they went together to a pool table in said saloon, and affiant after drinking his beer turned and left the saloon. Affiant further says that he did not hear any conversation between plaintiff and said Nutt.

These affidavits were met by the appellee by counter-affidavits of the jurors Nutt and Blanchette and of Riley and the appellee himself, in which every material statement made in the affidavits of appellant's witnesses were specifically denied. It would seem that the fact that the trial court in overruling the motion for a new trial determined the issues of fact raised by the affidavits adversely to appellant is a sufficient answer to the assignment. In addition to this it appears that the only juror who is directly charged with improper conduct was excused from the panel by the agreement of both parties to the suit. Appellant having agreed to the discharge of the juror and taken its chances on the result of the verdict of the eleven jurors, can not now be heard to complain that this juror while a member of the jury was guilty of improper conduct. By agreeing to excuse him and proceed with the trial with eleven jurors appellant waived any objection it might have taken to the conduct of the juror Nutt. Clark v. Elmendorf, 9 Texas Ct. Rep., 213.

We are of opinion that the judgment of the court below should be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.