GALVESTON, H. & S. A. RY. CO. v. MILLER. (No. 5754.)

(Court of Civil Appeals of Texas. San Antonio. Feb. 7, 1917. Rehearing Denied March 7, 1917.)

1. TRIAL ☞252(11) — SPECIAL ISSUES—CONFORMITY TO EVIDENCE—PARTICULAR WORDS —"STOB"—"STUB."

In action for injuries to freight conductor in yards when he stumbled over an object variously described as a stake, stob, or stub, where the testimony referred to it in each of those terms, submission of the issue whether there was a stake or stub without limiting it to a grade stake was not error; the word "stob" being a variation of the word "stub," which means a small post.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603.]

2. MASTER AND SERVANT ☞276(7)—INJURIES TO SERVANT—PROXIMATE CAUSE—EVIDENCE —SUFFICIENCY.

Evidence held sufficient to sustain verdict for freight conductor's injury in the yards on the theory that he had, as alleged, fallen or stumbled over a stake or stob protruding from the ground.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 951, 959.]

3. MASTER AND SERVANT ☞278(14) — INJURIES TO SERVANT—PROXIMATE CAUSE—EVIDENCE—SUFFICIENCY.

Evidence held sufficient to show that stake or stob over which freight conductor stumbled in the yards, and was injured, had been in the path for such a time as to impute to the employer negligence in permitting it to remain.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 966.]

4. MASTER AND SERVANT ☞125(1)—INJURIES TO SERVANT—SAFE PLACE TO WORK—LIABILITY.

A railroad is not negligent in permitting a stob or stake to remain in a path used by its freight employés unless it knew that the same was there prior to the alleged accident, or would, in the exercise of ordinary care, have known that it was there and would have removed it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 243.]

5. TRIAL ☞194(19)—INSTRUCTIONS — INVADING PROVINCE OF JURY — WEIGHT OF EVIDENCE.

In freight conductor's action for injuries, requested instruction that, if plaintiff stumbled over a stake in the yards while at work, that alone would not warrant affirmative answer to a special interrogatory, was properly refused as invasion of the jury's province.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 466.]

6. TRIAL ☞260(1) — INSTRUCTIONS — ADDITIONAL INSTRUCTIONS.

It is not error to refuse additions to an instruction the only effect of which would be to satisfy the party's preference of an expression.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651.]

7. MASTER AND SERVANT ☞289(1) — INJURIES TO SERVANT — CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

Evidence held to warrant submission to jury of issue whether freight conductor injured by stumbling over a stake in the path was guilty of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1089.]

8. TRIAL ☞252(11)—INSTRUCTION—EVIDENCE TO SUPPORT.

It is not error, in freight conductor's action for injuries when he stumbled over a stake in the yards, where the evidence is overwhelming that he did not know of its presence, to refuse requested instructions on assumption of risk.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 603.]

9. MASTER AND SERVANT ☞217(21)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Assuming that a freight conductor by walking rapidly in the yards at night assumed the risk of presence of mesquite bushes, grass, or weeds, of whose presence he knew, he did not necessarily assume the risk of a stake concealed by such bushes and of which he did not know.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 589.]

10. MASTER AND SERVANT ☞129(7)—INJURY TO SERVANT—PROXIMATE CAUSE.

Where freight conductor hurrying along a path in the yards in performance of his duties

stumbled over a stake and fell, presence of the stake was the cause of his injuries, and it was immaterial whether he fell upon a rock in the path.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 263.]

11. APPEAL AND ERROR ⊂⊃1001(1)—SCOPE OF REVIEW—MATTERS OF FACT.

Where a cause is properly pleaded and there is evidence to sustain the verdict, it is controlling upon the court upon appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3928-3933.]

12. TRIAL ⊂⊃114—STATEMENT OF COUNSEL—PROPRIETY.

The statements of counsel in argument that the first four special issues represented plaintiff's theory, and the last four, defendant's, was not prejudicial, where the effect of the answers to the questions was apparent and obvious.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 275-278, 296.]

13. DAMAGES ⊂⊃132(7)—EXCESSIVE DAMAGES.

Verdict of $17,500 was not excessive where the plaintiff railway freight conductor, 50 years of age, earning an average of $124 a month, received severe injury impairing the strength and usefulness of his leg and severe shock to his back, spinal column and cord, and to his nervous system, impairing his general health and the functions of his heart and causing him to suffer pains in his head and left arm and impairing his hearing, all of which injuries were permanent.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 378.]

Appeal from District Court, Bexar County; R. B. Minor, Judge.

Action by H. J. Miller against the Galveston, Harrisburg & San Antonio Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, and Templeton, Brooks, Napier & Ogden and Ed W. Smith, all of San Antonio, for appellant. Perry J. Lewis, H. C. Carter, Randolph L. Carter, and Champe G. Carter, all of San Antonio, for appellee.

SWEARINGEN, J. This is a suit for damages for personal injuries by appellee, H. J. Miller, against the Galveston, Harrisburg & San Antonio Railway Company, appellant.

It is alleged that appellee was in the employ of appellant as a conductor on one of its freight trains at the time of the injury, which train was being operated westward towards San Antonio, and it became necessary to stop at the station of Seguin, and when the train made the stop it became appellee's duty to make his way from the caboose to the telegraph office; that while appellee was making his way to said telegraph office he struck a "stob" or stake that was driven into the ground and in his pathway; appellee was thrown violently to the ground and injured. It was further alleged that the "stob" or stake was within the yard limits of the station at Seguin, where it was necessary for the defendant's train employés to frequently move about in the discharge of their duty, and it was the duty of appellant to use ordinary care to prevent obstructions in the pathway where its employés had to perform their duty, but appellant negligently caused and permitted the said "stob" or stake to be in the ground upon said premises and in such position that appellee came into collision with it and that the appellant's said negligence directly caused the appellee's injuries; that the "stob" or stake was driven tightly into the earth and stood above the surface some four or five inches, in the way of appellee, not far from the track, and appellee's collision with said stake occurred at night, and he did not discover the same until after it had caused his fall; that the appellant knew, or by the exercise of ordinary care could have known, of the aforesaid obstruction, and appellee did not know of said obstruction until after he was injured, and he was in the exercise of proper care to prevent injury to himself; that by reason of being thrown, by coming in contact with the obstruction, the appellee received a severe injury to his left knee and leg; that said injury has greatly impaired the strength and usefulness of said knee and leg, and the same is a source of constant suffering; that appellee received a severe shock to his entire back, spinal column and cord, which have been weakened and impaired; that appellee's nervous system received a great shock; that his general health has been impaired; the functions of his heart have become impaired; that he suffers greatly from pains in his head and left ear; his hearing has become impaired; that all of said injuries are permanent; that prior to his injuries appellee was a strong and healthy man and had been a conductor on appellant's line for many years and had an earning capacity of about $200 per month, which he had a reasonable expectancy of increasing, but since his injuries he has been unable to perform labor and his earning capacity has been almost entirely destroyed.

The appellant answered by a general demurrer, a general denial, and specially that appellee's injuries, if any, were not due to injury sustained in the alleged accident, but to disease or other causes for which appellant was not responsible. And further answered that appellee had testified in his depositions that he had noticed a number of grade stakes, mesquite stumps and bushes, and obstructions of that character along there, and, if this is true, then appellee had such knowledge of the presence of obstructions at that place and as to the danger incident to his walking along there as to put him upon notice thereof, and that with such knowledge and notice he voluntarily continued in the service and exposed himself to such danger and assumed the risk; and that he walked there in the nighttime without looking out for obstructions or taking any precautions to avoid accident and injury.

The court submitted special issues to the jury, and, upon the verdict, judgment was rendered against appellant for $17,500.

There was evidence to sustain the finding of the jury upon all the issues, which will be more specifically mentioned in connection with the various assignments hereinafter discussed.

On the trial of this simple personal injury suit, involving only the issues of negligence, injury, contributory negligence, and assumed risk, appellant's counsel earnestly insist that, with the liberal assistance of appellee's counsel, the court and jury committed 41 reversible errors, each of which is separately assigned as error.

[1] Appellant's first assignment complains that the trial court's first special issue required the jury to find whether or not there was a "stake or stob" at the time and place of the alleged injury. Appellant says this was error, because, while the petition alleges there was a "stake or stob," yet the evidence limited the obstruction to a grade stake, and the question should have been limited by the evidence. The testimony describes the obstruction as a grade stake or "stob" and also describes the obstruction as a stick. The word "stob" is a variation of the word "stub," which means a small post. The testimony describes the stake or "stob" as about two inches square and about four or five inches above the ground. The testimony sustained the petition and the special instruction properly conformed to both. The first assignment is overruled.

[2] The second assignment assails the finding of the jury that a "stake or stob" was at the time and place of the injury, because such verdict is "contrary to the evidence and to the overwhelming weight and great preponderance thereof." The plaintiff testified positively that he fell over an obstruction about two inches square and about four or five inches above the ground which was firmly driven into the ground on the left side of the path customarily used by trainmen in the discharge of their duties; that he examined it after relighting his lantern and tried to pull it up, but could not. An abundance of the testimony further shows that up to the time of striking the obstruction plaintiff was strong and active and able to perform his duties as freight train conductor, but immediately after the fall he began to suffer from the injury to his knee which permanently incapacitated him from performing those duties. This is evidence that appellee had a fall and fell over something, and this fact to an extent is corroborative. An attempt was made to minimize the weight of appellee's testimony by the testimony of a number of witnesses for appellant, who testified that none of them ever drove a stake or "stob" at the place of the injury prior thereto, never saw one there before or after the injury. These witnesses were employed by appellant either as section foremen or as members of the engineering corps. They testified that they would most probably have seen or known of the presence of the obstruction had one been there as claimed by appellee.

The credibility of the appellee witness was sought to be impeached by the fact that there were discrepancies in his statements. His age testified to at the trial contradicted the age stated by him in a written application. He testified by deposition that he had, previous to the accident, seen stakes along near the place of the accident. On the stand he testified that he had never seen stakes near there, and that his statement in the deposition was wrong, and that he wished to correct it, and then on recross testified that he did not wish to correct the deposition statement. To still further minimize appellee's testimony, the fact of his interest in the suit was mentioned; and it was further argued that it was necessary, in order to recover a judgment, that appellee disavow all knowledge of the presence of stakes near there. The assignment is very persuasive, but the credibility of the appellee and the weight to be given his testimony were passed upon by the jury in favor of appellee, and in deference thereto we must overrule this second assignment.

That the court asked the jury to find whether the appellant was negligent in permitting the stake to be at the place of the accident is assigned as error, for the reason that there is no evidence by which the jury could answer the question in the affirmative, hence the affirmative answer must necessarily have been based solely upon conjecture. In support of this, it is contended that the only evidence of the presence of the stake in the path was that of the plaintiff, who testified that he had seen it at the moment of the injury, never before nor since; contradicting which was the evidence that none of the other witnesses ever saw the stake at all. This, appellant urges, limits the evidence concerning the presence of the stake to the one fact that the stake was seen only at the moment of the injury. To this condition of the evidence appellant's counsel apply the doctrine discussed in Railway v. Jones, 103 Tex. 187, 125 S. W. 309, viz. (to paraphrase a portion of that opinion): That it cannot be presumed, without evidence, that the appellant had, in fact, such complete control of every part of its yards and of every stake of this kind as to make it reasonable to infer that its servants, contrary to their duty, either put this stake at this place, or negligently allowed it to be there when they knew or should have known of its presence, rather than that it may have come to be there without their fault. Further applying that opinion: In order to constitute negligence, the stake must have been put in the path by some employé, or its presence there must have been known to some of them before the accident, or must have continued long enough to justify the inference that the

failure to know it was due to a want of the proper care.

A very careful consideration of the evidence in the case at bar leads us to the conclusion that there are facts in evidence sufficient to warrant a reasonable belief that the stake had been in the path long enough to justify the inference that the failure to know it was due to a want of the proper care. That evidence is that the section crews and the engineering crews in appellant's employ used stakes of the same size, 1½ to 2 inches square and of the approximate length of the stake in question, by driving them firmly into the ground in course of their employment for leveling the surface of the roadbeds, straightening tracks, and similar work; that the company's stakes were of cypress or pine, as this one appeared to be; that the appellant's engineering crew had driven stakes in the railroad yards at Seguin about four times during 1914 and about six times during 1913, though witness testified that the work requiring these stakes was west of the depot, whereas the injury occurred east of the depot.

The section foreman at Seguin had been working near Seguin since February, 1914, only, and testified that he did not know of any stakes being driven in the path during the period from February, 1914, to August 19, 1914, the date of the injury, and that if there was a stake in the path as claimed it must have been put there before February, 1914.

The testimony shows that the stake was weather beaten, which bears out the reasonable conclusion that it had been in the path for a long time. And the testimony shows that the stake was so firmly driven into the ground that the appellee could not pull it up, which eliminates the idea of an accidental dropping of an obstruction and is consistent with the conclusion that it was deliberately and intentionally placed in the path for a considered purpose. As the stake was on the right of way of appellant in its yards, between two railroad tracks which were only seven or eight feet apart, over which passenger and freight trains were constantly running night and day bearing traffic between Houston and San Antonio, the deduction can be reasonably drawn that the stake was put in the path by an employé of appellant for leveling or straightening these particular tracks or as a guide for similar work near the place of injury, which was testified to by appellant's witness Nall. There is evidence that, according to one system of work, stakes were driven in by the engineering crew and left by that crew to be removed by the section crew. Obstructions like stakes in the path were a recognized danger; and it was the rule to look for them and remove them from the path. It was the duty of the foreman and his section crew to keep the grass and weeds and obstructions like this stake cleared from the path. The foreman on duty from February, 1914, up to the time of the injury, had wholly neglected to cut the grass and weeds and bushes along the sides of the path and in the path during his entire service from February, 1914, until September, 1914, after the injury, though he knew it was probable that there might be obstructions and knew the same would be dangerous to the trainmen whom he knew were required to use the path in their employment day and night.

[3] All of these facts do not constitute direct testimony that the stake had been in the path for any definite length of time, but they are each distinct facts, not conjectures, and together, like any other circumstantial evidence, are sufficient to warrant a reasonable belief of the existence of the fact that appellant was negligent in permitting the stake to be at the place of injury. We think there is as much or more evidence to support the finding of negligence in this case than there was in the case of Washington v. M., K. & T. Ry., 90 Tex. 315, 38 S. W. 764, of the fact that Washington was on the path when killed and not a trespasser on the track or riding on one of the cars. Washington v. M., K. & T. Ry. Co., 90 Tex. 314, 38 S. W. 764; M., K. & T. Ry. Co. of Tex. v. Keefe, 37 Tex. Civ. App. 588, 84 S. W. 679; Texarkana & Ft. Smith Ry. Co. v. Toliver, 37 Tex. Civ. App. 437, 84 S. W. 375.

While this court may not have considered the evidence sufficient to prove the fact by that preponderance required of the plaintiff, upon whom the burden rested, yet it was sufficient to require a submission of the question to the jury and make the jury's verdict binding upon us. The third, fourth, and fifth assignments are overruled.

[4] The seventh assignment complains that the charge of the court, given in connection with the third special issue, incorrectly stated the law, and that the court should not have given it after objections made and appellant's instruction requested. The portion of the court's charge to which objection was made is:

"The defendant would not be negligent in permitting such 'stob' or stake to remain there, unless you find that defendant knew that same was there prior to the alleged accident, or would, in the exercise of ordinary care, have known that such 'stob' or stake was there and would have removed the same."

The pertinent portion of the refused requested instruction is:

"The defendant would not be negligent in permitting such stake or 'stob' to be there, unless you find that some agent or employé of defendant, whose duty it was to look out for and remove such obstructions, knew that same was there prior to the alleged accident, or would, in the exercise of ordinary care in the performance of their duty, have known that such stake or 'stob' was there prior to the alleged accident, and would, in the exercise of ordinary care, have removed the same."

The court did not commit error in the matter complained of, for its charge correctly stated the law applicable to the issue made in this case. The issue made in this case does

not bring it within the rule of the case of, Railway v. Belcher, 88 Tex. 549, 32 S. W. 518. The seventh assignment is overruled. This also disposes of the sixth assignment.

The special requested charges Nos. 4, 6, 7, 14, and 15, the refusal of which is complained of as error in the eighth, ninth, tenth, eleventh, and twelfth assignments, all imply that appellant could not be negligent unless it employed an agent or employé whose duty it was to look for and remove the alleged obstructions and who were negligent, and for that reason all of the last-mentioned assignments are overruled.

[5] The thirteenth assignment is that the court erred in refusing requested charge No. 16, as follows:

"In connection with question 3 submitted in the main charge, you are instructed as follows: Even if you find that plaintiff stumbled over a stob or stake between defendant's main line track and east passing track at Seguin as he claims to have done, that fact by itself alone is not sufficient evidence to justify you in answering said question in the affirmative."

This charge is based upon the theory that there is no evidence of negligence which has been disposed of in our discussion of the third assignment. This charge in itself is error because it invades the province of the jury. Railway v. Baker, 58 S. W. 964; Railway v. Michalke, 62 Ark. 585, 37 S. W. 48; Smith v. Railway, 65 S. W. 83; Railway v. Lynch, 40 Tex. Civ. App. 543, 90 S. W. 511. The thirteenth assignment is overruled.

[6] By the fourteenth assignment it is urged that the court should have qualified its instruction defining negligence and ordinary care and the duty of the master by adding to the charge the further instruction that the defendant (appellant) was not an insurer of the plaintiff's (appellee's) safety.

The court's instruction was complete and correct. 3 Labatt's Master and Servant (2d Ed.) § 920. The addition requested could not have made it more correct even though as an abstract proposition of law the addition itself was correct. It cannot be reversible error to refuse additions to an instruction, the only effect of which would be to satisfy appellant's preference of expression. Texas Midland R. R. v. Brown, 58 S. W. 46; Consumers Lignite Co. v. Grant, 181 S. W. 203, 209 (9–12). The fourteenth assignment is overruled.

[7] For the fifteenth assignment it is claimed the court erred in submitting to the jury for their decision question 5, which reads:

"Did the plaintiff on the occasion of the alleged accident fail to keep such a lookout and to take such precautions to avoid accident and injury to himself as a person of ordinary prudence would have kept and taken under the same or similar circumstances?"

Counsel urge the issue was erroneously submitted because the evidence raises no issue on that point. It would have been contributory negligence on the part of appellee if he had used the path in such way as no

ordinarily prudent person would have used it and under similar circumstances. This was pleaded and testimony thereon solicited. The evidence was rather extensive as to the condition of the path, time and manner of using it, and appellee's familiarity therewith prior to and at the moment of the injury. In answer to counsel's cross-questioning, appellee testified that it was dark at the time of the injury; that he carried a good light on his right side; that, while he did not shine the light ahead of him purposely to locate the path, yet he could tell from his light where he was going. He did not know there was any danger of stumbling over an obstruction in the path. If he had known there were stakes or other obstructions in the path, he would have held his lantern around and searched for the obstructions to avoid stumbling over them. He was not expecting any such obstructions in the path and walked hurriedly to ascertain his orders with his mind on his business—getting out. The court very properly and correctly submitted to the jury the issue of contributory negligence. The fifteenth assignment is overruled.

The finding of the jury that appellee was not guilty of contributory negligence is assailed in the sixteenth assignment as being "contrary to the evidence and to the overwhelming weight and great preponderance thereof."

There was testimony showing in what manner appellee used the path and the circumstances under which he used it. In fact, appellant's assignment admits as much. No claim is made in this assignment that there is no evidence. The jury exercised its prerogative to resolve that evidence in favor of appellee. This sixteenth assignment must therefore be overruled in accordance with the opinion in Texas Midland R. R. v. Brown, 58 S. W. 45, as follows:

"By the laws of this state, the jurors are made the exclusive judges of the credibility of the witnesses, and of the weight to be given to their testimony. Where a question of fact, upon which the testimony is conflicting, is fairly submitted to a jury, the decision of the jury upon it is final, unless it is affirmatively shown that some improper consideration influenced the finding. We are only authorized to set aside the verdict of a jury on a question of fact where there is no evidence to support it, or where, conceding the truth of the supporting testimony, it is not legally sufficient to establish the fact. Such is not the case here, and the assignment that the evidence is not sufficient to support the verdict is not well taken."

Question 5, submitted to the jury, correctly and completely presented the issue of appellee's care in the use of the path and does not contain error for reasons assigned in the seventeenth assignment. The question requested in appellant's special charge was not more correct nor more complete. In fact, the requested charge seems to give special mention and undue prominence to the evidence bearing upon the fact of knowledge on the

part of appellee and seems to assume that contested fact proven, for all of which reasons the requested instruction was not correct. San Antonio & A. P. Ry. Co. v. Grady, 171 S. W. 1019, and authorities therein cited.

[8] By the assignments numbered from 19 to 32, inclusive, are presented 13 errors concerning the issue of assumed risk committed by the court in giving instructions thereon, or in the form given, and in the refusal of requested instructions, committed by the jury in rendering findings on the issues of assumed risk contrary to the evidence, and committed by appellee's counsel for failure to properly plead avoidance of assumed risk. We have, with very great care, in deference to distinguished counsel's earnestness, considered each one of these assignments on the assumed risk issue; but we believe a detailed discussion of each of them is rendered unnecessary because the court correctly submitted the issue of whether or not appellee knew of the presence of any stake at or about the place where he claims to have been injured. The jury answered that appellee did not know of the presence of the stake in the path. There was the direct evidence of appellee that he did not know that any stake was in the path. He had used the path many times for many years and had never seen the path so obstructed. There is the direct testimony of many of appellant's witnesses that they never saw any such or similar obstruction in the path either before or after the injury. It seems to us that the overwhelming weight of the evidence sustains the finding that appellee did not know of the presence of the stake in the path. In fact, the abundance of the testimony upon this fact was used with most persuasive force upon us by appellant's counsel to destroy the finding by the jury of the other fact, that there was a stake in the path.

[9] Answering the objection to the form of the court's charge, in that the question should have included mesquite bushes, grass, or weeds, we think that appellee could not recover at all if the obstruction was anything other than the stake pleaded and proven; but, when it was proven to be a stake, the only escape for appellant from liability by the assumed risk route depended upon appellee's knowledge of the probable presence of the stake. Had appellee expressly assumed the risk of injury by falling over mesquite bushes, grass, and weeds, it would not follow that he also assumed the risk of falling over a stake.

The above conclusions of the facts and law indicate with sufficient clearness that the assignments bearing on the question of assumed risk, numbered from 19 to 32, inclusive, should be overruled.

[10] We do not believe the phraseology of question No. 2 presents reversible error, as contended in the thirty-third assignment. The question reads:

"Did the plaintiff stumble over such stob or stake and thereby have inflicted upon him any of the injuries alleged in his petition?"

The negligence with which appellee is charged is that of permitting the stake to be in the path. No negligence is claimed because a rock was permitted to be in the path. Since appellant was negligent in permitting the stake to be in the path which caused the injuries to appellee, it is immaterial in this case whether appellee hit his knee on sand, mud, glass, or a rock. Any variation in the evidence from the version given by appellee might be used to discredit his testimony and thereby enable the jury to determine the credibility of the witness, but the fact of a variation could not be incorporated into a question submitting the material issue, which issue was this: "Was appellee injured by stumbling over a stake in the path?"

The thirty-third, thirty-sixth, and thirty-seventh assignments are overruled.

[11] Because there was evidence to support the jury's answer to question No. 2, as will appear from previous portions of this opinion, the thirty-fourth assignment must be overruled.

The thirty-fifth assignment must be overruled because there was evidence to sustain the jury's answer, "Yes," to the fourth question: "Did such negligence directly cause to plaintiff any of the injuries alleged in this petition?" Appellee's testimony supports this finding, as well as that of his physicians.

The thirty-ninth and fortieth assignments must be overruled. The thirty-ninth presents appellant's peremptory instruction, and the fortieth urges that the pleadings, the evidence, and the findings of the jury are not sufficient to warrant the judgment. We believe that pleadings make a case of liability for the injuries to appellee because of the negligence of appellant in permitting the stake to be in the path furnished by appellant for appellee to use at night in the performance of his duties for appellant; that appellee was injured by falling over it without contributory negligence, and had not assumed the risk. There was evidence to support all the jury's findings, though we must confess that such a casualty from such commonplace circumstances brings this case near to that class where the improbable is probable; where truth is stranger than fiction. Nevertheless, we are controlled in such matters by the jury and the trial judge.

[12] The forty-first assignment urges error because counsel for appellee stated to the jury that the first four questions submitted by the court's charge presented the facts upon which plaintiff based his theory of liability, and the next four of the defendant's defenses of contributory negligence and assumed risk, and told the jury that, under the facts and evidence they should answer the first four questions in the affirmative.

The effect of the answers was so apparent and obvious to the jury in this case that

counsel's remarks could not be reversible error. Southwestern Telegraph & Tel. Co. v. Elsie Phillips Sheppard, 189 S. W. 799.

[13] That the amount of the verdict is excessive is brought before us in the thirty-eighth assignment. A careful consideration of the evidence to determine the question thus presented discloses that unusual and unexpected results from commonplace incidents was by no means confined to the testimony introduced by appellee. Appellant's answer contained an allegation to the effect that, if appellee had his knee injured, yet his bad physical condition was not caused by the injury to the knee, but by disease or other causes for which appellant was not responsible. In support of this defense, doctors of the very highest standing gave, as their testimony, opinions of the cause so novel and out of the ordinary that it is possible that the 12 ordinary men constituting the jury "failed to grasp the idea." The general impression intended to be created upon the minds of the jury was that the admitted bruise or blow on the knee did not produce the incurable bony growth under the knee cap, but that it was caused by some germ, "preferably," a degenerating, syphilitic germ. The evidence relied upon, for this technical opinion, was that while there was no indication or mark of any kind or character upon appellee, or the slightest personal history to show a trace of that disease, and notwithstanding the Wassermann test, universally used to detect such germs, showed no trace of it, yet, because a number of years previously appellee's wife had suffered a first miscarriage immediately after falling down a long flight of stairs, and a second during a long, severe attack of typhoid fever, the doctors concluded that appellee's suffering was caused by that germ and that the jury should so find. Nor was this involved theory rendered any more simple by the railroad surgeon, who instructed the jury that the condition of the knee was due to some germ, name unknown, which may have entered appellee's body not at the knee, but through his tonsils or teeth, and catapulted the somewhat surprising information that both of appellee's knees were in the same diseased condition. The jury may have failed to realize why appellee could use one knee without inconvenience or pain while the other knee, in the same condition, was painful and nearly useless. But perhaps the jury, composed, as it probably was, of men of less technical experiences, could not believe because they could not understand. However, the great preponderance of the testimony convinced the jury that appellee's suffering was great, progressive and permanent; that his capacity to perform his accustomed labor was wholly destroyed. His age was about 50, and his average earnings approximately $124 a month, and his life expectancy about 20 years. They estimated the fair compensation for such injuries at $17,500—a very large amount. But we can find no prejudice or passion, or improper motive or influence in the record before us that may have induced this great verdict, and we believe therefore that we are concluded by the jury's verdict. Being unable to find any reversible error in the record, we must affirm the judgment.

Judgment affirmed.