GILLETTE MOTOR TRANSPORT CO. et al. v. WHITFIELD.

No. 14335.

Court of Civil Appeals of Texas. Fort Worth.

Feb. 27, 1942.

Rehearing Denied March 27, 1942.

Massingill & Belew and Hill & Paddock, all of Fort Worth, for appellant Gillette Motor Transport Co.

Bullington, Humphrey & Humphrey, Leslie Humphrey, and G. C. McDermett, all of Wichita Falls, and Conner & Conner and Earl Conner, all of Eastland, for appellant Wichita Falls & Southern R. Co.

Buck & Knapp, of Fort Worth, for appellee Whitfield.

McDONALD, Chief Justice.

This case involves a collision between a motor truck and a train, in which the plaintiff, T. E. Whitfield, a brakeman on the train, suffered serious personal injuries. The collision occurred in the City of Ranger, in Eastland County, where the main line of the Wichita Falls & Southern crosses U. S. Highway No. 80.

Whitfield, the brakeman, first filed suit in Tarrant County against Gillette Motor Transport Company, the owner and operator of the truck, which will hereafter be referred to as the truck company. The truck company answered, and by cross action impleaded the Wichita Falls & Southern Railway Company, alleged to be the employer of Whitfield and the operator of the train, seeking a recovery over against it for such judgment as Whitfield might recover against the truck company. Whitfield then amended, suing both the truck company and the railway company.

The railway company filed a plea of privilege, seeking to remove the case to Wichita County, the county of its residence. Both Whitfield and the truck company filed controverting pleas, seeking to retain venue in Tarrant County. Action thereon was reserved by the court until the trial of the case upon its merits, at which time the plea of privilege of the railway company was overruled.

After the plaintiff and the truck company had respectively put on their evidence, the railway company introduced in evidence its charter, and also the charter of Wichita Falls & Southern Railroad Company, and certain lease contracts purporting to show that the train was being operated not by the defendant Wichita Falls & Southern Railway Company, but by another corporation named Wichita Falls & Southern Railroad Company. For convenience, the former will be designated as the "railway" company, and the latter as the "railroad" company. The truck company then filed a motion asking leave to withdraw its announcement of ready and asking for a continuance, which the court overruled. Plaintiff and the truck company then each filed a motion for leave to amend their respective pleadings, saying that they had intended to sue the company which operated the train and by whom the plaintiff was employed, and that they thought that the names Wichita Falls & Southern Railroad Company and Wichita Falls & Southern Railway ·Company were interchangeably used to denote the same company, and that they did not know that there were in fact two companies. Such motions were granted by the court, whereupon plaintiff filed his third amended petition, and the truck company filed its third amended answer and cross-action, in both of which pleadings the name of Wichita Falls & Southern Railroad Company was substituted for that of Wichita Falls & Southern Railway Company. Plaintiff and the truck company examined some of the attorneys who had appeared for the railway company, and also Mr. Sullivan, the general manager of the railroad company, obviously in an effort to establish that the railroad company was the company which had actually, through its officers and attorneys, appeared and defended the suit.

No service of citation was had after the substitution of names in such amended pleadings. All pleadings filed by the railway defendant were in the name of the railway company, and motions for peremptory instructions were filed in the name of the railway company. The only instrument filed in the name of the railroad company was a motion for new trial, filed after the judgment was rendered.

The citations issued upon the petition of the plaintiff, and upon the cross-action of the truck company, appear to have been served upon J. D. Sullivan, the general manager of the railroad company, who held no office except that of director in the

railway company. Mr. Humphrey, one of the attorneys appearing for the railway company, testified that he was attorney for both companies, but that he expected to be paid by the railroad company. It appears from the testimony taken that the claim agent of the railroad company investigated the claim, and it appears that the railroad company expected to pay, or had paid, the expenses of all the witnesses who took part in the trial on behalf of the railway company. The lease contracts introduced in evidence seem to provide that the railroad company shall be obligated to defend any suits brought against the railway company as a result of the operation of the road under the lease, and to pay any judgments rendered in such suits.

The trial court rendered judgment against the railroad company, making no express disposition of the railway company, finding in effect that the railroad company was the company which had actually been sued, although in the wrong name, and that the railroad company had in fact, through its officers, agents and attorneys, answered to the suit and had appeared and contested it at the trial. The trial court obviously treated the situation as one of misnomer of a party, within the rules hereafter mentioned.

The railroad company prosecutes this appeal.

In such cases as Abilene Independent Telephone & Telegraph Co. v. Williams, 111 Tex. 102, 229 S.W. 847, it is held that a party who has been sued, and served with citation, may under some circumstances be bound by the judgment rendered even though there was some mistake in his name as set out in the pleadings, citation and judgment. Reference is made to the case cited, and to Wichita Coca Cola Bottling Co. v. Levine, Tex.Civ.App., 68 S.W.2d 310, writ refused, and to Arcola Sugar Mills Co. v. Doherty, Tex.Civ.App., 254 S.W. 650, writ refused, for discussions of the rules in such cases.

But a different situation may be presented where a plaintiff sues one of two persons or corporations having similar names, and serves the wrong person, or where he is mistaken as to which of two persons or corporations is liable in the case, and sues the wrong one, whether the names are similar or not. See the opinion of Justice Speer, in West v. Johnson, Tex.Civ.App., 129 S.W.2d 811, for a clear discussion of the distinction between the two situations.

In the first class of cases, there is a mistake in the name of the party intended to be sued, while in the second class of cases there is a mistake in the identity of the defendant. In the latter instance, if the wrong person is sued, the court does not thereby acquire jurisdiction of the person who should have been sued, in the absence of an answer or appearance, even if the pleadings are amended.

The fact that the plaintiff and the truck company may have been confused by the similarity of names, or the fact that they may have been misinformed as to which of the two companies operated the railroad, would not alone bring the case within the rules of the Abilene Telephone case, supra. If there had been no company bearing the name of Wichita Falls & Southern Railway Company, we might have a case of misnomer of parties. But there was such a company. The proof shows that the two companies were associated to some extent, that they had the same man holding the office of president, that they used the same attorney, Mr. Humphrey, and that Mr. Sullivan, the general manager of the railroad company, was a director of the railway company. The line of track where the collision occurred was not owned by either of these companies, but by the Wichita Falls, Ranger & Fort Worth Railroad Company. It was used by the railroad company under a lease from the owner. There is nothing in the record to show that the railroad company was responsible in any degree for the mistake made by plaintiff and the truck company in suing the wrong company. The act of the railway company in answering and appearing, even if it had not been properly served, would not be enough to bring the railroad company before the court. A conclusion on the part of the railway company that it was not liable, or knowledge that it was not the plaintiff's employer and was not the owner or operator of the railroad, would not impose upon it any duty to apprise plaintiff and the truck company in advance of the trial that they had sued the wrong company. Nor would mere knowledge by the railroad company of such facts be enough to substitute it for the railway company as a party to the suit. Nor would the act of the sheriff, in delivering to the manager of the railroad company a citation directed to the railway company, accomplish such a result. The general manager of the railroad company, who was

also a director of the railway company, and must therefore have known of the existence of the latter, referred the citation to Mr. Humphrey, the attorney who represented both companies, who in turn appears to have answered in the name of the company which was named as a defendant. While the unusual facts of this case have some appeal to our sympathies, and might cause us to guess that the railroad company hoped to take advantage of the misunderstanding of the plaintiff and the truck company, we nevertheless consider that it would establish a dangerous doctrine to hold that the trial court had jurisdiction to render judgment against the railroad company under the particular facts of this case. It is our opinion that the findings of the trial court with respect to the matter are not supported by the record. It is our view that the judgment against the Wichita Falls & Southern Railroad Company is a nullity. We approve and follow the holding in Wichita Falls & Southern Railway Co. v. Foreman, 109 S. W.2d 549, by the Eastland Court of Civil Appeals, where a somewhat similar situation was presented.

■■ The proper procedure in such a case seems to be to reverse the judgment below, and to remand the case for further proceedings. 3 Tex. Jur. 130, and cases there cited. With reference to the filing of a motion for a new trial by the railroad company, as constituting an appearance, and its right to urge a change of venue, we call attention of the parties to the following authorities: Atchison, T. & S. F. Ry. Co. v. Adams, 4 Willson Civ.Cas.Ct. App. 12, 14 S.W. 1015; Turner v. Ephraim, Tex.Civ.App., 28 S.W.2d 608; Griffin v. Langley, Tex.Civ.App., 40 S.W.2d 1100. Although the question is not briefed, and is not directly presented on this appeal, it would seem to us that the filing of the motion for new trial, together with the taking of an appeal, would require the railroad company to answer by the date which would be the appearance day next following the final termination of this appeal.

In view of the possibility of another trial, we shall further discuss the venue question.

If we are correct in holding that the case is not one of misnomer of the railroad company, then the question of venue of the action against the railway company has become moot, the railway company having been dropped out of the case by virtue of the amendment of the pleadings. But if we be in error in such holding, and if it should be thought that the case is properly one of misnomer of the defendant, and that the pleadings and appearance of the railway company are in fact those of the railroad company, then it must be considered that the plea of privilege of the railway company is that of the railroad company.

■ The controverting plea of the plaintiff urges that venue is maintainable in Tarrant County under Section 4, of Article 1995, R.C.S., on the ground that the truck company is a resident of Tarrant County and that the railway company is a proper party. It is undisputed that the truck company is a resident of Dallas, not Tarrant, County. This removes the case from Section 4. As between the plaintiff and the railway company, we do not believe that the railway company is a necessary party, within contemplation of Section 29a, of Article 1995, Vern.Ann.Civ.St. The Commission of Appeals, in an opinion adopted by the Supreme Court, has defined a necessary party as one without whose presence before the court no adjudication of any of the subject matter involved in the litigation can be had. First National Bank v. Pierce, 123 Tex. 186, 69 S.W.2d 756. The plaintiff first sued only the truck company, and could have fully litigated his controversy with that defendant without the presence of the railway company in the suit. If plaintiff desired to sue both companies, he might have done so, under Section 4, by bringing the suit in the county of the residence of one of them. Henderson Grain Co. v. Russ, 122 Tex. 620, 64 S.W.2d 347; Moore v. Hoover, Tex.Civ.App., 150 S.W.2d 96.

■■ The controverting plea of the truck company, the insufficiency of which we may review as fundamental error without assignment of error since it appears upon the face of the record, does not allege facts sufficient to bring the case within either Section 4 or Section 29a. The truck company does not allege, in its controverting plea, that it is a resident of Tarrant County, nor that the Tarrant County district court has venue of the cause of action against the truck company under any provision of Art. 1995, as is required by Section 29a. The fact that the suit may have been maintainable against the truck company in Tarrant County, or the fact that it may have appeared and answered there,

would not supply the lack of necessary allegations in the controverting plea.

■ From the character of judgment rendered, the trial court seems to have treated the cross-action of the truck company against the railway company as a plea for contribution among joint tortfeasors, as provided by Art. 2212, R.C.S. Whether he was correct in so doing we need not now determine. We hesitate to express any opinion as to questions relating to venue which may come up on another trial, since we do not know whether the railroad company will file a plea of privilege, nor whether the other parties to the suit would controvert such a plea. We have not found a decision of our appellate courts which we consider to be exactly in point upon the question of whether a defendant, sued as a tortfeasor, not in the county of his residence, but in some county having venue of the suit against him by reason of some provision of Art. 1995, can implead another alleged joint tort-feasor who does not reside in that county, seeking contribution under Art. 2212, and maintain venue against his alleged joint tort-feasor in the county where the suit is brought. It seems to us that the second joint tort-feasor could properly be considered a necessary party, as contemplated by Section 29a of Art. 1995, from the standpoint of the tortfeasor first sued, although not from the standpoint of the plaintiff. Art. 2212 reads as follows:

"Contribution between tort feasors. Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons co-defendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judg-

ment in proportion as he has been caused to pay by reason of such insolvency."

If the language of the statute should be taken literally, it might be considered that the second joint tort-feasor, who was not a party to the suit in which the judgment was rendered, would nevertheless be bound to pay one-half of a judgment, the amount of which was determined in a suit to which he was not a party and which he may not have been given opportunity to defend. We doubt if such is the effect of the statute. We are then led to the proposition that the question of the amount of damages would again have to be litigated in the later suit brought by the defendant in the original suit to enforce contribution under Art. 2212. The jury in the second suit might find that the original plaintiff had suffered a lesser amount of damages, the result of which would be the award of relief lesser than that contemplated by Art. 2212. It appears to us that the only practical and effective way to execute the provisions of Art. 2212 is to permit the tort-feasor first sued to maintain venue of the cross-action against the other alleged joint tort-feasor in the county having venue of the plaintiff's suit against the tort-feasor first sued.

We are familiar with the holding in the case of Houser v. Harris, Tex.Civ.App., 44 S.W.2d 784, but observe that it was held that the joint tort-feasor relationship did not exist in that case. The decision, therefore, is not authority upon the precise question just discussed.

■ The truck company seeks a reversal upon the ground, among others, of alleged misconduct of the jury.

Three of the jurors testified at the hearing upon the motion for new trial, the transcript of their testimony covering 67 pages of the statement of facts. There does not appear to us to be any substantial difference in the testimony of the three jurors concerning the discussion of either the attorney's fee or the pension matter.

Some time before the damage issue was taken up for discussion, one of the jurors made a remark to the effect that he wondered how much of the sum recovered the plaintiff would have to pay the lawyers. Two or three of the jurors expressed the opinion that he would have to pay forty per cent. The foreman, and one or perhaps two more of the jurors, promptly

stated that the jurors should not consider the question of attorney's fees for any purpose. No further mention of the matter was made during the jury's deliberations.

It appears without dispute that the jurors also had some discussions about the character and amount of retirement pension which the plaintiff would have become entitled to, had he continued to work for the railroad company. Plaintiff was fifty years old at the time of the collision. He had a life expectancy of about twenty years. His wages were about $200 per month. One or more of the jurors stated that they knew some railroad men and knew that they drew pensions after they reached the age of sixty-five, and that these pensions ranged from $70 to $100 per month. It appears that the jurors discussed the matter of a pension while considering the amount of verdict to be rendered. Plaintiff argues that the only effect the discussion about pensions could have had was to reduce the amount of recovery. He argues that the testimony of the jurors, taken on the hearing of the motion for new trial, shows that all of the jurors were in favor of finding an amount based upon loss of earnings of from nine to fifteen years. Plaintiff argues that if the jury considered pensions at all, they figured that plaintiff would have been compelled to retire at the age of sixty-five, and that he could not have continued thereafter to earn his usual wages, and would have been entitled then only to the pension. The railroad company has not raised the question of misconduct of the jury. The truck company argues that the effect of considering the pension matter probably increased the amount of the verdict. The jurors who testified said that the jury discussed the fact that the plaintiff would not be expected to remain physically able to follow railroad work for the entire term of his life expectancy, but that after reaching the age of disability to do such work he would have become entitled to a substantial pension. The truck company argues that the jury probably endeavored to find an amount which would compensate plaintiff for the loss of wages up to the time he would be unable to work, and for the loss of the pension which he would thereafter have been entitled to had he not been deprived of his employment because of the injuries suffered in the collision.

Both sides discuss the applicability, or not, and the effect, of Rule 327, of the new rules of practice and procedure.

The San Antonio Court of Civil Appeals, in the case of Germann v. Kaufman's, Inc., 155 S.W.2d 969, writ refused, w. o. m., has held that this rule is not applicable to a case tried, as was this case, before the effective date of the new rules. We are inclined to a different view. Rule 327 contains no change from Article 2234, as to what acts constitute misconduct of the jury. The only change relates to the procedure to be followed when the matter is presented to the trial judge upon motion for new trial, or to the appellate court upon appeal. We believe that the acts of the jury which have been mentioned would be classed as misconduct under the old rules or the new rules. Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307; Texas & N. O. R. Co. v. Parry, Tex.Com.App., 12 S.W. 2d 997; Traders & General Ins. Co. v. Lincecum, 130 Tex. 220, 107 S.W.2d 585.

The only question, as we see it, is that of the burden of proof at the time the matter comes before us. Under the decisions construing Article 2234, the burden was upon the appellee to show beyond a reasonable doubt that the misconduct did not injuriously affect the appellant. Rule 327 provides that a new trial may be granted "if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

Under many of the rules, as published, appear certain footnotes. A footnote under Rule 327 reads as follows: "Change: Imposing burden on complaining party to show probability of injury."

We are not certain that we know what effect should be given to such footnotes. We believe we might presume that they were left there by the Supreme Court, in the publications containing the rules, as an interpretation, or as a guide to interpretation, of the rules.

It can fairly be said in the present case that the appellant has not proven that the misconduct injured him, nor has the appellee proven that it did not. If we may indulge in speculation about the matter, we might perhaps guess with as much reason one way as the other. Under the decisions construing Art. 2234, we would

have no difficulty in holding the misconduct of the jury in the present case to be reversible error. We also are of the opinion that it should be held to be reversible error under Rule 327. There was neither pleading nor evidence pertaining to the pension matter. The jury went entirely out of the record and relied upon the information, or supposed information, of certain of the jurors relating to railroad pensions. It is a matter of common knowledge that people generally are now giving much thought to the matter of pensions and other plans of old age benefits. It is conceivable that some of the jurors, particularly if they were men reaching advanced age, may have considered that the loss of opportunity for receiving the pension was something substantial, and that the plaintiff should have been compensated not only for the loss of wages which he might have earned, but also for the loss of the pension which he might have received.

Aside from the footnote, the language of Rule 327 is not essentially different from that contained in old rule 62a, for the Courts of Civil Appeals, which provided that no judgment should be reversed unless the appellate court should be of opinion that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. The above cited decisions in "misconduct" cases were rendered while Rule 62a was in force. Rule 327 provides that a new trial may be granted if it reasonably appears that injury resulted to the complaining party. We also observe that old Rule 62a appears, verbatim, in new Rule 434. The change in policy in the new rules, if any there be, is chiefly indicated by the footnote under Rule 327.

■ Without attempting to interpret Rule 327, and the footnote thereunder, further than is necessary to the disposition of this case, we are of opinion that the misconduct which appears from the undisputed evidence to have occurred in this case, should be held to be reversible error. There will be many cases where, as a practical matter, it will not be possible to establish definitely whether the misconduct did or did not result in injury to the complaining party. We believe that discretion must be exercised by the courts in such cases, and that they have authority to grant new trials if it appears to them that there was a reasonable probability of injury to the complaining party, even though injury be not definitely proved.

■ The only other question which appears necessary to consider is one of contributory negligence of the plaintiff, raised by the truck company's first point, which reads as follows: "The undisputed testimony revealing that plaintiff participated, acquiesced and concurred in the negligence which the jury found was a proximate cause of his injuries, he was precluded from recovery against the Transport Co. even though it was also guilty. The defendant's motion for judgment should have been sustained."

After the train arrived in Ranger, it engaged in a switching operation, moving a freight car and a tank car from one part of the city to another. The tank car and the freight car were being pushed ahead of the locomotive at the time of the collision. The jury found this to be negligence on the part of the defendant railroad company. The truck company argues that it should have had judgment, as against the plaintiff, on this finding, because the plaintiff, a brakeman on the train, "participated, acquiesced and concurred" in this negligent act.

The truck company's pleadings contain no allegations charging plaintiff with any negligence in this respect. The jury found that the plaintiff was not negligent in riding upon the box car. The arrangement of the train seems to have been under the direction of the conductor, not of the plaintiff. We doubt seriously if the pleadings of the truck company are sufficient to charge negligence, in this respect, even as against the railway company. The only allegation thereof is a conclusion to the effect that it was negligence to push the tank car and freight car ahead of the engine, with no allegations of any facts showing that such an arrangement was dangerous, or showing that the train operatives could have reasonably foreseen that a collision would probably result therefrom. And we are not able to find any evidence of probative force sufficient to support a finding of negligence, especially on the part of the plaintiff.

■ When another trial is likely, appellate courts will usually refrain from expressing opinions upon the weight of the evidence, unless necessary in their disposition of the appeal. But we will go this far. We approve the views expressed by

the Eastland Court of Civil Appeals in the cases of Wichita Falls & Southern R. Co. v. Anderson, 144 S.W.2d 441, and Wichita Falls & Southern R. Co. v. Hesson, 151 S.W.2d 270. Those cases involved a collision at the same crossing involved in the case before us.

The judgment of the trial court is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.