## STOTTS v. LOVE et al.

### No 2479.

Court of Civil Appeals of Texas. Eastland.

Nov. 3, 1944.

Rehearing Denied Dec. 8, 1944.

Strasburger, Price, Holland, Kelton & Miller, of Dallas, for appellant.

Williams & Bell, of Childress, for appellees.

GRISSOM, Justice.

Sam Love was killed as the result of a collision between his truck, while being driven by his employee, J. L. Hawkins, and a truck owned by H. W. Stotts, driven by Stotts' employee, J. M. Mince. The trial resulted in a jury verdict upon which the Court rendered judgment for the plaintiffs, Mrs. Lessie Love (for $4,255) and Herman Love (for $1,000), the wife and

minor child, respectively, of the deceased, Sam Love. The defendant, H. W. Stotts, has appealed.

■■ Appellant's first point is that the court erred in refusing to define the term "new and independent cause," used by the court in its definition of proximate cause. Appellant duly tendered a correct definition and asked that it be given. It was refused. Appellee answers said contention as follows: (1) That the evidence did not raise the issue of new and independent cause, and (2) that, if it did, it was not reversible error for the court to refuse to define the term because the issue of unavoidable accident was submitted; and (3) because the same "issue" claimed by appellant to constitute a new and independent cause was submitted. We think appellee's contentions are untenable. The evidence did raise the issue of a new and independent cause. There was evidence that just prior to the collision the driver of Love's truck was blinded by the glaring lights of automobiles driven by persons not connected with the accident. We do not understand that necessity for the definition is obviated by the fact that the issue of unavoidable accident was submitted to the jury. Appellees seem to be of the opinion that appellant relies upon testimony that Hawkins, driver of Love's truck, saw a sign on his righthand side of the highway which he mistook for a culvert and that Hawkins would have pulled further to the right and avoided the collision had he then known, as he later learned, that the object he saw, as the trucks approached each other before the collision, was a road sign and not a culvert, as raising the issue of a new and independent cause. As heretofore stated, without any reference to the matters just mentioned, we think the evidence that the driver of Love's truck was blinded by the glaring lights of an automobile driven by a third person was sufficient to raise the issue. We think the following authorities require a reversal of the judgment because of the refusal to define the term "new and independent cause." Orange & N. W. R. Co. v. Harris, 127 Tex. 13, 18; 89 S.W. 2d 973; Greer v. Thaman, Tex.Com.App., 55 S.W.2d 519, 521; Dixie Motor Coach Corp. v. Galvan, 126 Tex. 109, 86 S.W.2d 633, 634; Tarry Warehouse & Storage Co. v. Duvall, 131 Tex. 466, 115 S.W.2d 401, 405; Phoenix Refining Co. v. Tips, 125 Tex. 69, 73, 81 S.W.2d 60; Robertson & Mueller v. Holden, Tex.Com.App., 1 S.W.2d 570, 571; Southland Greyhound Lines, Inc. v. Cotten, 126 Tex. 596, 91 S.W.2d 326, 328.

Appellant alleged in his motion for a new trial that during the deliberation of the jury, "It was stated and discussed and considered that the defendant in this case was protected by liability insurance, and that (the) Insurance Company would have to pay the verdict." In an attempt to establish said allegations of misconduct, some of the jurors were called and testified on the motion for new trial. Their testimony, so far as it is relevant to said issue, is as follows:

The juror A. L. Roden testified on direct examination by Judge Newton:

"Q. While you were in the jury room deliberating on this case, did any of the jurors mention anything about the truck of Mr. Stotts being a bonded truck? A. It was mentioned.

*  *  *  *  *  *

"Q. Was anything said about the Dallas attorney? A. Yes, he was mentioned.

"Q. What was said? A. Some of them, I think, said he was probably hired by the year by the insurance company.

(Cross Examination)

"Q. Said that he probably was? A. Yes, sir.

"Q. There wasn't any discussion of it? A. No, sir.

"Q. Just mentioned? A. Yes, sir.

"Q. And didn't somebody say, when it was mentioned, you shouldn't discuss that? A. Yes, sir.

"Q. And there wasn't any further remarks about it? A. No, sir.

"Q. They didn't discuss whether the bonding company would have to pay it, or anything? A. No, sir.

"Q. Didn't state that to be a fact? A. No, sir.

*  *  *  *  *  *

(Re-direct Examination)

"Q. They did say Mr. Stotts' truck was a bonded truck? A. Yes, sir.

"Q. And the insurance company, they presumed, was paying the Dallas lawyer's fee? A. They figured it was."

Mr. New testified:

(Direct Examination)

"Q. While you were in the jury room deliberating on your verdict, was anything mentioned about the Stotts truck being bonded? A. It was mentioned, and I, for one, you know about a bunch of men discussing things like that—

"Q. Some juror mentioned it? A. Yes, it was mentioned and I said, 'Gentlemen, I don't think we are supposed to discuss that,' and somebody says, 'I don't think so,' and I said, 'That is the way I understand it,' and so far as I know, it wasn't discussed any further.

"Q. Do you remember anything being said about the attorney's fee? A. No, sir, I don't.

"Q. Or the Dallas attorney, and that the insurance company was to pay his fee? A. No, sir.

"Q There wasn't anything else you remember? A. No, sir.

(Cross Examination)

"Q. This other about the truck being bonded, that was just a surmise by some juror? A. Yes, someone wondered whether it was or not.

"Q. And there wasn't any discussion of it? A. No, sir, it was dropped."

Mr. Floyd testified:

(Direct Examination)

"Q. While out deliberating on this case as a juror, did some member of the jury, or did you hear anyone discuss anything about the Stotts truck being bonded, or carrying liability insurance? A. No, not, in other words, the question was brought up but as far as discussing it, we didn't because it was stopped.

"Q. Do you know what was said? A. Someone just asked if it was insured and somebody said we was not supposed to discuss that.

"Q. Was anything said about attorney's fees? A. I didn't hear anything about attorney's fees.

"Q. That is all you heard about insurance? A. Yes, sir.

"Q. Did you hear anything about the Dallas attorney, or why he was appearing? A. No, sir.

\*      \*      \*      \*      \*      \*

(Cross Examination)

"Q. This about whether it was a bonded truck or not, as soon as that was mentioned somebody said not discuss it and it wasn't discussed? A. No, sir.

"Q. It was dropped right there? A. Yes, sir."

Mr. Clonts testified:

(Direct Examination)

"Q. While in the jury room deliberating on your verdict, state to the Court whether or not anything was mentioned concerning insurance; just tell what happened in there about that? A. About the only statement that was made in there, somebody, I don't know who it was, some member mentioned the fact that they had a Dallas lawyer, that it was probably an insurance company case or the insurance company was interested, but the fact that the Judge had mentioned that there couldn't be any discussion of anything that wasn't in evidence, it was all stopped right there.

"Q. Was anything said about the truck being insured? A. Not any more than that, I don't think.

"Q. In reference to this conversation that they had a Dallas lawyer and must have had insurance, was that the way the matter was brought up as to the truck being insured? A. I think so. As well as I remember, that was all that was said about it.

\*      \*      \*      \*      \*      \*

(Cross Examination)

"Q. Mr. Clonts, when this was brought up, did they say insurance, or did they say it was a bonded truck? Do you remember which expression they used? A. No, sir. I don't.

"Q. And as soon as it was mentioned, somebody said you wasn't to discuss that and it was dropped? A. Yes, sir.

"Q. There wasn't any discussion about it? A. No, sir.

"Q. It wasn't stated as a fact then? A. No, sir.

"Q. They were just surmising about it? A. That's right."

Mr. Bohannon testified:

(Direct Examination)

"Q. While you were out deliberating as jurors on that case, was anything mentioned in the jury room concerning insur-

ance, or a bonded truck or attorney's fees? A. Really I think it was mentioned that it was probably an insurance case, something like that, merely mentioned is all.

"Q. In connection with that was anything mentioned about the attorney from Dallas? A. Really, I couldn't say for sure, but I think it was mentioned, maybe, that he was an insurance attorney, something like that was the general opinion.

* * * * * *

"Q. Was anything mentioned concerning Mr. Stotts' truck carrying liability insurance? A. I don't believe there was; I don't remember.

"Q. What you stated is about all you heard? A. Yes, sir.

(Cross Examination)

"Q. Whatever was said, it was just a casual mention of it, wasn't it? A. It was just mentioned; wasn't any of those things discussed in the jury room.

"Q. It wasn't stated as a fact? A. No, sir.

"Q. Somebody said you wasn't supposed to discuss those things and it was immediately dropped? A. Absolutely.

"Q. Wasn't any discussion of it? A. No, sir."

Mr. Bowden testified:

(Direct Examination)

"Q. While out in the jury room deliberating on this case, was anything mentioned concerning that Mr. Stotts had insurance, and, if so, how much would the insurance company stand of the loss? A. No, sir, I don't think so. There was twelve men talking most of the time, but as far as insurance being brought up, somebody started to say something about insurance and was stopped, and it wasn't never talked any more at all.

"Q. Did you make a statement to Mr. Stotts or his representative? He talked to you, didn't he? A. Some man, I believe his name was Crow.

"Q. Was Mr. Stotts with him? A. There was somebody in the car; I don't know who it was.

"Q. They asked you, didn't they, this question—with reference to insurance, if they thought Mr. Stotts had insurance and, if so, how much would the insurance company stand of the loss, and you told them you thought it was mentioned but it was-

n't considered when the trial was being discussed? A. That's right.

"Q. Do you know anything about the Dallas attorney being mentioned? A. No, sir, I do not.

"Q. You don't remember anything about that? A. No, sir.

(Cross Examination)

"Q. Whatever was said was just casually mentioned? A. That's right; it had no bearing whatever on the verdict.

"Q. It wasn't discussed? A. No, sir.

"Q. Somebody said you wasn't to talk about that and it was dropped immediately? A. Yes, sir, that's right."

Mr. Laquey testified:

(Direct Examination)

"Q. While out on that case, deliberating as a juror, did you hear any discussion, or was there any discussion, by any member of the jury in the jury room concerning whether or not Mr. Stotts' truck was bonded or carried insurance? A. Well, somebody mentioned that, I don't remember who, and another one spoke up and said the Judge instructed us not to discuss anything other than the case.

"Q. It was discussed that Mr. Stotts' truck carried insurance? A. No, they just brought it up.

"Q. They mentioned it? A. Yes, sir, but it wasn't discussed.

"Q. Did anybody say anything about attorney's fees of the Dallas lawyer, or the reason he was here? A. No, sir, we didn't know anything about that.

(Cross Examination)

"Q. It was just casually mentioned, something about a bonding company? A. Just asked if the truck was bonded, or something like that.

"Q. Nobody didn't say it was? A. No, sir.

"Q. All that was said somebody just asked the question? A. If it was a bonded truck.

"Q. And somebody said you weren't supposed to discuss that and it was dropped right then? A. Yes, sir."

Mr. Simmons testified:

(Direct Examination)

"Q. While out deliberating on this case as a juror, did you hear any discussion

concerning Mr. Stotts' truck carrying insurance? A. No, sir, there wasn't any discussion of that.

"Q. Do you remember hearing anything concerning anything about insurance? A. There was somebody mentioned insurance and they said that wasn't to be discussed.

"Q. Do you remember what they said? A. No, sir, I don't.

"Q. With reference to the insurance? A. No, sir, I don't remember.

"Q. Did they say anything about the Dallas attorney, the reason why he was here? A. No, sir, I don't remember hearing that.

"Q. All you remember is that insurance was mentioned? A. Yes, sir.

"Q. You don't remember who mentioned it? A. No, sir.

(Cross Examination)

"Q. Whatever was said about insurance was just a casual mention of the question, was it? A. Yes, sir, it was just mentioned and somebody said we wasn't supposed to discuss it.

"Q. And it was dropped right then? A. Yes, sir."

■ The Supreme Court of Texas has held that the effect of Texas Rules of Civil Procedure, rule 327, is to abolish the former rule that where misconduct of a jury is shown a reversal must follow, unless it is shown beyond a reasonable doubt that such misconduct did not affect the verdict. Under Rule 327 the burden is now on appellant not only to prove, by a preponderance of the evidence, that the jury was guilty of misconduct, but also to show that the misconduct probably resulted in injury to him. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464. The question presented is whether it is shown that jury misconduct probably resulted in injury to appellant. Even under the rule that existed prior to the passage of Rules of Civil Procedure, rule 327, the decisions were to the effect that a casual mention of insurance, promptly rebuked by the foreman or some other juror, did not constitute reversible error. Bradley v. Texas & P. Ry. Co., Tex.Com.App., 1 S.W.2d 861; Sproles Motor Freight Lines, Inc. v. Long, 140 Tex. 494, 168 S.W.2d 642, 644. In this case there was no evidence, as there was in the Barrington-Duncan and many other cases, that anyone stated to the jurors as a fact that appellant was protected by insurance. Since the court overruled the motion, it is our duty, in the absence of findings of fact by the court, to construe the testimony of the jurors in the most favorable light of which it is susceptible from the standpoint of appellees. Monkey Grip Rubber Co. v. Walton, 122 Tex. 185, 192, 53 S.W.2d 770; Menefee v. Gulf C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287; Tumlinson v. San Antonio Brewing Ass'n, Tex.Civ.App., 170 S.W.2d 620. Applying this rule, we presume that the trial court concluded that the facts were one or more jurors "surmised" or "wondered" whether appellant's truck was insured and his lawyer represented the insurance company; that there was no discussion of the matter; that when the remark was made other jurors promptly called attention to the fact that they were not supposed to discuss such matters, and they were not thereafter mentioned. We cannot say that it reasonably appears from the entire record that injury probably resulted to appellant as a result of such remarks in the jury room; therefore, the point is overruled. Rules of Civil Procedure, rule 327; McCullough Box & Crate Co. v. Liles, Tex.Civ.App., 162 S.W.2d 1055, 1056, writ refused; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642, 644. We have eliminated from the testimony of the jurors matters not pertinent to the quoted allegation from defendant's motion for new trial. All the jurors testified that their verdict was not affected by the remarks referred to. Such testimony is "without force or effect, and may not be considered by the court in passing upon the question of probable injury." City of Houston v. Quinones, Tex.Sup., 177 S.W.2d 259, 263. Therefore, we have also deleted such testimony from our statement of the evidence on the motion for a new trial.

■ We overrule appellant's fourth point, to the effect that the jury's finding that the driver of Love's truck did not fail to keep a proper lookout was clearly contrary to the overwhelming preponderance of the testimony. Appellant contends that the testimony of Hawkins and A. C. Love show that neither of them could have been keeping a proper lookout; that both, immediately prior to the collision, thought they saw a culvert, when, as a matter of fact, what they saw was a road sign. They conclude that this mistake showed they were not keeping a proper

lookout. There was evidence that shortly prior to the collision Love's truck crossed a culvert; that immediately before the collision Hawkins and A. C. Love saw an object along their right-hand side of the road that they thought was a culvert, but which proved to be a sign. There was evidence that Hawkins drove very close to the sign and off of his side of the paved surface of the highway. There was also evidence from which the jury could have concluded that Love's truck was driven so far off of the pavement on its right hand side that it did strike this sign and knock down a portion of it. Hawkins testified that before the collision, on account of a blinding light, he pulled far to his right, leaned out of his cab and watched the edge of the pavement on his side and kept to his right as he drove slowly onward. The fact that he testified he was to some extent blinded by the lights and mistook the sign for a culvert certainly did not have the effect of destroying all of his testimony tending to show that he was keeping a proper lookout. Lockley v. Page, Tex.Sup., 180 S.W.2d 616, 618.

Appellant's remaining points present questions that need not arise on another trial, and will, therefore, not be discussed. The judgment is reversed and the cause remanded.