**WHITE CABS et al. v. MOORE.**
No. 2559.

Court of Civil Appeals of Texas.   Eastland.
Dec. 6, 1946.

Rehearing Denied Jan. 24, 1947.

Wilkinson, Johnson & Griffin, of Brownwood, for appellants.

E. M. Davis, of Brownwood, Lee Curtis, of Belton, and J. V. Hammett, of Lampasas, for appellee.

LONG, Justice.

This is a suit for personal injuries brought by William D. Moore against White Cabs et al. in the District Court of Brown County. Plaintiff was a soldier stationed at Camp Bowie near Brownwood. At about 11 in the evening on February 16, 1944, plaintiff was riding a motorcycle on U. S. Highway No. 283 between Camp Bowie and Brownwood, and while attempting to pass defendants' taxicab, being driven by Roscoe Petty, a collision occurred between the taxicab and the motorcycle, and as a result thereof plaintiff sustained serious personal injuries.

The jury in response to special issues submitted found that Roscoe Petty, the driver of the taxicab, was guilty of negligence that was a proximate cause of the collision in question in the following particulars: (a) in changing the course or direction in which the cab was being driven by turning to the left at the time and place of the collision without giving any signal or warning of his intention of so changing said course or direction; (b) without first seeing if there was sufficient space for such movement to be made in safety; (c) that he failed to keep a proper lookout for plaintiff's motorcycle on the highway. The jury acquitted the plaintiff of all charges of contributory negligence and fixed plaintiff's damages at the sum of $16,000. The court rendered judgment for such sum, and upon the overruling of a motion for a new trial, defendants excepted and gave notice of appeal, and the same is properly before us for our consideration. Defendants base their appeal upon nine points.

In their motion for a new trial the defendants alleged that the jury was guilty of misconduct in that during their deliberation the members of the jury discussed insurance, attorney's fees, and a portion of the testimony with reference to Roscoe Petty that had been excluded from their consideration, and that taxicab drivers were reckless. Upon a hearing of the motion, all members of the jury testified fully with reference to these matters. At the conclusion of such hearing, the court overruled the motion for a new trial and filed findings of fact and conclusion of law based thereon. The court concluded that the discussions of the jurors about Roscoe Petty having had trouble with an M. P. and about insurance and attorney's fees constituted misconduct on the part of the jury. The trial court further found that after taking into consideration the evidence on the trial of the case, and on the motion for a new trial, and the entire record that no injury to the defendants, or either of them, probably resulted from any or all of such jury misconduct. The defendants had the burden of proof to establish that the jury was guilty of misconduct. This was an issue of fact which was by the trial court found in their favor, supported by ample testimony. The trial court having found that such misconduct occurred, and his findings being supported by sufficient evidence, such findings are binding upon this court. Blau-

grund v. Gish, Tex.Civ.App., 179 S.W.2d 257.

■ However, the defendants had the further burden of showing that probable injury resulted to them by reason of such misconduct. Texas Rules of Civil Procedure, rule 327; Church v. Texas & Pacific Motor Transport Co., Tex.Civ.App., 193 S.W.2d 994; Stotts v. Love et al., Tex. Civ.App. 184 S.W.2d 308; Hudson v. West Central Drilling Co., Tex.Civ.App., 195 S. W.2d 387. As to whether such misconduct resulted in probable injury to the defendants is a question of law. In passing upon this question, it is our duty to consider the pleadings, the evidence on the trial of the case, and on the motion for a new trial, and the record as a whole.

We will first consider the defendants' point with reference to the discussion by the jury of attorney's fees. The trial court found that upon retiring, the jury elected its foreman and that he immediately read to the jury the complete charge. The jury answered the first 13 special issues and skipped the 14th, which was the amount of damages to be awarded, and answered the remaining issues, after which they returned to special issue No. 14. Upon the first ballot on said issue, five of the members of the jury voted for $20,000, five for $17,500, and one for $15,000. The foreman of the jury did not vote upon the first ballot, but after the ballot was taken, he stated to the other members of the jury that he would be willing to go along with a majority of the jury upon any amount between $15,000 and $20,000. The time consumed in the discussion of attorney's fees was probably a minute or two. Some of the jurors mentioned that they were wondering what percentage of recovery the plaintiff would have to pay his lawyers. One juror imagined 10%, another imagined 30%, and another imagined 50%. Some of the jurors said they wanted the plaintiff to have enough money left over after paying his attorneys to get a good start in life. The foreman stopped the discussion and informed the members of the jury that attorney's fees should not be discussed. Attorney's fees were mentioned again briefly and again stopped by the foreman. There is no evidence showing that the jury attempted to and did award attorney's fees as a part of the recovery allowed the plaintiff. It is not shown that the jury took into consideration attorney's fees in arriving at the amount of damages awarded. Further, there is no contention by the defendants that the judgment rendered was excessive.

■ The doctor who attended plaintiff testified, and it is undisputed, that plaintiff sustained a double fracture to the bones in his right leg, that both bones in his right leg were broken in two places, and the ends thereof were exposed. He further testified that plaintiff stayed in a cast until about November, 1944. The cast was removed, and an operation was performed upon his leg. A piece of bone was removed from the shin of his left leg, and this was grafted at the side of the fracture of his right leg. It was then necessary to place his left leg in a cast to protect the bone and keep it from breaking. His left leg remained in a cast for some six weeks or two months. The cast on his injured leg remained thereon continuously until three or four months before the trial of the case. It was necessary to perform two other operations upon the injured member of his body. The evidence further shows that the injured leg is one to one and one-half inches shorter than his other leg and is several inches smaller. At the time of the accident he was a young man 28 years of age, strong and healthy, and before entering the Army he had been employed making a substantial salary each week. Under this state of the record, no probable injury is shown by reason of the jury misconduct with reference to attorney's fees. Houston & T. C. R. Co. v. Gray, 105 Tex. 42, 143 S.W. 606; Texas Public Service Co. v. Mireles, Tex. Civ.App., 149 S.W.2d 298; International-Great Northern R. Co. v. Hawthorne, Tex. Civ.App., 90 S.W.2d 895.

■ We next come to a consideration of the jury misconduct with reference to the discussion of liability insurance. The most that can be said as to the evidence on this point is that some members of the jury wondered whether or not the defendants might have had insurance. Some of the jurors expressed the opinion that the

defendants did not have insurance and gave as their reasons for this opinion that no insurance company was party to the suit, that insurance had not been mentioned during the trial, and that no insurance company lawyer or representative attended the trial. No juror said that the defendants did have insurance; neither did any juror say that defendants could not operate their cabs without having insurance, nor that the city required defendants to carry insurance. Defendants rely upon Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462. We believe that case is distinguishable from the instant case upon the facts. In the Barrington case some members of the jury stated positively that the defendants did have liability insurance and could not operate their trucks without carrying it and that such liability insurance was in the sum of $10,000. The verdict of the jury was for $10,000. Further, the extent of the injuries of the plaintiff in that case was a sharply contested issue. In the case at bar there was no statement that the defendants did have insurance, but on the contrary, the members of the jury were of the opinion that the defendants did not have such insurance. The extent of the plaintiff's injury is not a contested issue. As has been heretofore stated, the facts show unquestionably that he received a serious and permanent personal injury that would impair his earning capacity throughout the remainder of his life; further, that he has and will sustain great physical pain and suffering. We are of the opinion that probable injury to the defendants is not shown. Stotts v. Love et al., Tex.Civ.App., 184 S.W.2d 308.

During the trial of the case, counsel for the defendant propounded the following question to the witness Roscoe Petty: "You had nothing against this boy on that night (referring to the plaintiff)?" to which the witness answered, "No Sir, I never saw him before". Upon cross-examination counsel for the plaintiff asked the witness the following question: "Roscoe, had you ever been arrested on the post at Camp Bowie by the M. P's?" to which question counsel for the defendant objected. Counsel for the plaintiff then asked permission to change the question and asked the following: "Roscoe, had you ever had any trouble with the Military Police at the post at Camp Bowie?" To this question Mr. Johnson, counsel for the defendant, objected. Mr. Curtis, counsel for the plaintiff, then stated to the court that the evidence was admissible in order for the jury to determine if he thought this boy an M. P. and whether or not he was prejudiced against the M. P's instead of turning out to pass a car in front of him without lights. The court sustained the objection and instructed the jury not to consider the question. The defendants reversed a bill of exception notwithstanding the court's instruction. While the jury was deliberating, one of the jurors stated that plaintiff's attorney had tried to bring out that Roscoe Petty had had trouble with an M. P. and he would like to know what the true facts were about it. The foreman and other jurors immediately stated that such matter had been ruled out by the Judge and that it should not be considered for any purpose. There is no showing in the record that counsel in asking the question did not act in good faith. If the witness Petty had a prejudice against M. P's and the plaintiff could show such prejudice, this would probably have been admissible to show that was the reason that he turned his taxicab to the left in front of the oncoming motorcycle. Plaintiff was a soldier stationed at Camp Bowie near the City of Brownwood. He was married and lived in Brownwood. He rode a motorcycle to and from the camp to his home. He left the camp about 11 at night on February 16, 1944, traveling on U. S. Highway No. 283 between Camp Bowie and Brownwood, Texas. Roscoe Petty, the driver of defendants' taxicab, was operating such cab in the same direction at the time of the accident. Plaintiff testified that he pulled up behind the White taxicab and honked his horn, but that the cab failed to give him right of way, but pulled in front of him and then pulled back to the right-hand side of the road; that he honked his horn again and started around the cab; and that about the time he got even with the back end of the cab, that the driver thereof swerved the same to the left and brought about the collision of plaintiff's

motorcycle and the cab. Roscoe Petty testified that the reason that he pulled his cab to the left was that there was an old car in front of him without any taillights and that he pulled out to go around said car. Plaintiff's testimony shows that the motorcycle had no muffler and was making considerable noise. Petty testified that he did not know the motorcycle was behind him; that he did not see it; and that he did not hear the horn thereon. The jury found in response to a Special Issue submitted that the car without a taillight was not on the highway in front of Roscoe Petty just prior to the accident. The plaintiff, and other witnesses who were disinterested, testified that they did not see such car on the highway. The defendant Petty did not testify that it was necessary for him to turn his car to the left in front of the motorcycle in order to avoid striking such car. We believe that in view of the instructions of the court to the jury to not consider the question and the prompt suppression of the mention thereof in the jury room, that no probable injury to the defendants is shown.

■ The court found that the other alleged acts of jury misconduct did not occur. Such findings, being supported by the evidence, we are bound thereby and hold no error shown.

■ The sixth, seventh, eighth, and ninth points raised by defendants complain of argument of counsel. In presenting his argument to the jury with reference to Special Issue No. 24, plaintiff's counsel used the following language: "Wouldn't it be nice if the defendants could shove their responsibility in this case to some car without a tail light—an old red herring across your trail—a car as dark as midnight—nobody else saw it. Wouldn't it be wonderful just to say, 'I just want you folks to believe that car was there, and that is what caused me to do this, and therefore I just absolve myself, the White Cabs and all of us; we will absolve ourselves of the responsibility, because a—'"

Defendants objected to this argument on the ground that the same advised the jury as to the effect of their answer to such Special Issue and was prejudicial and re-

quested the court to instruct the jury not to consider it, which request was by the court refused. Special Issue No. 24 was conditionally submitted and inquired whether the motor vehicle being operated on the highway without a taillight immediately in front of the defendants' cab was the sole proximate cause of the collision. The jury having answered that such car was not upon the highway as contended by the defendants, Special Issue No. 24 became immaterial and was not answered by the jury. We doubt if Special Issue No. 24 was raised by the evidence. The defendant Roscoe Petty did not testify that it was necessary for him to turn the taxicab to the left immediately before the accident in order to avoid striking such car. The highway at the point of the collision was 45 or 50 feet wide. Petty testified that he was driving 25 to 30 miles per hour. Further, we do not believe that the argument had the effect of advising the jury the result of their answers to such issue. For the above reasons the argument as made was harmless.

■ Point No. 7 complains of the argument of the counsel in discussing Special Issue No. 11, such argument being: "I don't think the young woman lied, and I don't think the young man lied, and these other young men said it was very visible out there; and he says he just run up on this car. Now, question 11, did he fail to keep a proper lookout—of course, if you find there was a car there—that mystery car. There is always, in every case, a mystery car. I don't think it was there, but".

Defendants objected to such argument and especially to that portion thereof with respect to the mystery car on the ground that same was prejudicial to the rights of defendants, and statement on the part of counsel to the effect that there was a mystery car in every case and there was no evidence in the record to justify same, and was unsworn evidence on the part of plaintiff's counsel to the effect that appellants were using a defense used by every person situated as they were, irrespective of the facts. The court instructed the jury not to consider the remarks made about the mys-

tery car, but defendants, notwithstanding such instructions, excepted to the argument on the ground that it was of such prejudicial nature that it could not be cured by an instruction of the court. The court qualified the Bill of Exception to the above argument and certifies that after the objection was made and the court instructed the jury not to consider the statement of counsel about a mystery car, that counsel for the plaintiff stated to the jury. "Gentlemen, I am just making a little bit of by-play when I said that". Special Issue No. 11 was conditionally submitted to the jury and was not answered. In view of the prompt instruction by the court to the jury not to consider such argument, no reversible error is shown.

■ In discussing Special Issue No. 14, counsel for plaintiff used the following language: "You heard the doctor say that he would never be able to work—oh, he might be able to go to Mineral Wells and play with the little silk cocoons, little silk worms; he might be able to sit down in a chair on the street, in a beggarly sort of way, and sell peanuts and popcorn, but you know there is no future in that. How much for his loss of earning power, and how much for mental and physical suffering; we have asked for 25 thousand dollars, but Gentlemen, I wouldn't suffer that way— money is cheap; money is mighty cheap."

Defendants' counsel objected to such argument on the ground that it was prejudicial, inflammatory, and improper and requested the court to instruct the jury not to consider it, which request was by the court refused.

■ The argument as made was a fair comment on the facts and a reasonable deduction therefrom. It was not an appeal to the jury to award a greater amount of damages than was justified by the evidence. Also such argument was not an appeal to the self-interest of the jury. We overrule this point under the following authorities: Huey & Philp Hardware Co. v. McNeil, Tex.Civ.App., 111 S.W.2d 1205; Airline Motor Coaches, Inc., v. Campbell, Tex.Civ. App., 184 S.W.2d 532.

Point No. 9 questions the following argument: "Now, gentlemen, these first four-teen questions are asked you in response to the plaintiff's allegations in this case."

This argument was objected to on the ground that it advised the jury as to which issues were for the defendants and which were for plaintiff and was tantamount to apprising the jury of the effect of their verdict. The court, complying with request of defendants, instructed the jury not to consider such argument. Notwithstanding such instruction, defendants excepted on the ground that the argument was of such prejudicial nature that it could not be cured by the instruction of the court. Further, under said point defendants objected and excepted to the following argument: "I did not say that the plaintiff has asked for them or that the defendants have asked for them, but they are allegations the plaintiff has made in his petition and is in the attitude of asking and propounding questions on those allegations, and in the same attitude of asking and propounding questions on what the defendants have alleged; we have all asked for them."

This argument was objected to on substantially the same ground as the one above, and request was made of the court to instruct the jury not to consider it, which request was overruled and not granted. And also under said point complaint is made of the following argument: "Now, from the fourteenth question on we have the defendants' negligence issues—no, I do not mean the defendants' negligence issues, but the issues on contributory negligence".

Substantially the same objections as were made above were made to this argument. The court refused to instruct the jury not to consider it. We do not believe that any of the above argument is subject to criticism as made by the defendants. The argument did not inform the jury as to effect of their answers to the issues. It did not advise the members of the jury of any fact that they did not already know. This point is overruled. Texas & N. O. R. Co. v. McGinnis, 130 Tex. 338, 109 S.W.2d 160; Finck Cigar Co. v. Campbell, 134 Tex. 250, 133 S.W.2d 759; Galveston, H. & S. A. Ry. Co. v. Miller, Tex.Civ.App., 192 S.W. 593.

■ Defendants earnestly insist that if none of the errors assigned standing alone

is sufficient to bring about a reversal of the case, then when taken together they present such an array of errors, that the judgment of the trial court should not be permitted to stand. We recognize the rule that under some circumstances that one error in the trial of a case standing alone would not be sufficient to work a reversal of the judgment of the trial court; yet an accumulation of such minor errors might have the effect of creating an improper prejudice against the opposing party to such an extent that the judgment should not be allowed to stand. However, it is our considered opinion that the record in this case does not present such an accumulation of errors as to require a reversal of the judgment of the trial court. We have carefully considered all points raised by the defendants, and we are of the opinion that each of them should be overruled and that the judgment of the trial court should be, and is, in all things affirmed. Judgment affirmed.

## On Rehearing.

Counsel for defendants, in a very vigorous and able motion for rehearing, insist that our disposition of this case in our original opinion was wrong and that such motion should be granted, and the judgment of the trial court should be reversed, and the cause remanded for a new trial.

In their motion for rehearing our attention is called to an error in our original opinion wherein we stated that on the first ballot five of the jurors were for $20,000, five for 17,500, and one for 15,000. This portion of the original opinion is withdrawn. We should have stated that on the first ballot five of the jurors were for $20,-000, one for $17,500, and five for $15,000.

The discussion by the members of the jury with reference to attorney's fees and insurance was had before they had answered Special Issue No. 14, and after such discussions had occurred, they awarded the sum of $16,000 damages in answer to such issue. The question for our determination is: Does the record show that the misconduct of the jury as found by the trial court caused the jurors to increase their verdict from $15,000 to $16,000? Stating it another way, did the misconduct cause the jury to render a verdict for $1,000 more than it would have rendered if such misconduct had not occurred?

There was no material misconduct prior to the first ballot. The court submitted to the jury twenty-eight special issues. There is no showing that the jury had any unusual amount of difficulty in answering the issues. The jury began its deliberation on Wednesday morning and reached a verdict by the middle of the afternoon on the same day. There is no showing as to the number of ballots taken by the jury in attempting to answer Special Issue No. 14. There is no showing that any member of the jury was of the opinion that the amount of damages awarded was excessive or that it was more than plaintiff was entitled to under the facts. One of the jurors who voted for $15,000 stated that he would not have plaintiff's injury for $50,000. The discussions with reference to attorney's fees did not reach the stage of an argument and did not involve all of the members of the jury. The trial court found, such finding being amply supported by the evidence, that each of the five jurors who voted for $15,000 on the first ballot said to his fellow jurors during the jury deliberation that he thought the plaintiff had been damaged more than $15,-000, but that he did not want to award damages of more than $15,000 for various reasons stated by the jurors. Among such reasons given were (a) because the plaintiff, being a soldier, would probably receive a pension from the government on account of the injury; (b) because he had incurred no hospital and doctor bills; (c) because the jurors did not want to bankrupt the defendants or put them out of business; (d) because the defendants would be less likely to appeal the cause if the amount awarded was not too great. It seems to us that it is more likely that the low men on the jury by their arguments more probably induced the high men to come down than the high men induced the low men to increase their verdict. We cannot hold, looking at and analyzing the record as a whole, that the low men on the jury were caused to increase their verdict from $15,000 to $16,000 by reason of the misconduct of the jury.

Further, there is no showing in the record and we cannot find that such misconduct caused the jury to render a verdict for more than it would have rendered if such misconduct had not occurred.

On the question of misconduct with reference to discussions of attorney's fees, the defendants cite the following cases in support of their contention: Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 160 S.W.2d 290; City of Waco v. Darnell, Tex.Com.App., 35 S.W.2d 134; Sproles Motor Freight Lines v. Long, 140 Tex. 494, 168 S.W.2d 642; St. Louis S. W. Ry. Co. of Teaxs v. Lewis, Tex.Com.App., 10 S.W.2d 534; Texas & P. Ry. Co. v. Gillette, 125 Tex. 563, 83 S.W.2d 307; Texas & P. Ry. Co. v. Van Zandt, Tex.Com.App., 44 S.W.2d 950. These cases were all tried before the adoption of Rule 327, Texas Rules of Civil Procedure. As was pointed out in our original opinion, under the law as it existed before the adoption of such rule, where misconduct of the jury in reaching a verdict was shown, a reversal would follow unless the record disclosed beyond a reasonable doubt that such misconduct did not influence the jury in rendering its verdict. Under the law as it now exists, where misconduct is shown, the burden is upon the complaining party to show that probable injury resulted to him by reason thereof. We agree with the holdings of the cases cited by the defendants. We are, however, of the opinion that they have no application to the instant case. If we were called upon to decide this case under the law as it existed prior to the enactment of Rule 327, it would be our duty to hold that reversible error is shown by reason of the jury misconduct. But under the law as it now exists, we are of the opinion that the defendants failed to discharge the burden of showing that the jury misconduct resulted in probable injury to them.

Defendants also cite Union Bus Lines v. Moulder, Tex.Civ.App., 180 S.W.2d 509. In that case the trial court found that the misconduct of the jury occurred and that same injured the complaining party, but refused to grant a new trial by reason thereof in view of the fact that the plaintiff remitted the amount of the verdict in excess of the amount contended for by the lowest juror. The Court of Civil Appeals at San Antonio held that this was improper and that the remittitur did not cure such misconduct and reversed and remanded the judgment of the lower court. We have a different situation in the case under consideration. In the instant case no question of remittitur is involved. It is our opinion that the case cited is not in point upon the questions involved in the case at hand.

The trial court, at the request of defendants, made the following additional findings of fact: "For the purpose of clarifying this finding, the court finds that one juror stated that he kept thinking about the statement made by Mr. Curtis about the M. P. and that he could not help thinking it was an M. P., or the defendant might have thought it was an M. P. and that he wanted to get even with him, or something to that effect. Immediately upon that statement being made, the foreman and other jurors said that said matter had been ruled out by the judge and that it should not be considered for any purpose. Thereafter there was no further mention of this matter. That was about the same time the question of the M. P. was brought up, some juror made the remark that 'sometimes taxicabs carried something besides passengers' and he was told that was not to be brought up nor discussed, and it was not mentioned thereafter."

We have again reviewed the record and the authorities cited with reference to the misconduct of the jury in discussing the excluded evidence and the question asked the witness Roscoe Petty by counsel concerning trouble with the M. P., and have done this in connection with the additional findings of fact as filed by the trial court. It is our opinion that probable injury is not shown by reason of such misconduct. We are of the opinion that no reversible error is shown under the fifth point as raised by the defendants, in which they complain of the action of counsel for the plaintiff in propounding the question to the witness Roscoe Petty, in which counsel asked him concerning having trouble with the M. P. at Camp Bowie. We have again reviewed the entire record and have given

careful consideration to defendants' motion for a rehearing, and we are of the opinion that our disposition of the case in our original opinion was correct.

Motion for rehearing overruled.