## HUDSON v. WEST CENTRAL DRILLING CO., Inc., et al.

### No. 2544.

Court of Civil Appeals of Texas. Eastland.

May 24, 1946.

Rehearing Denied June 14, 1946.

Smith, Eplen & Bickley, of Abilene, for appellant.

Thompson, Knight, Harris, Wright & Weisberg, of Dallas, and McMahon, Springer & Smart and R. C. Grisham, all of Abilene, for appellees.

GRAY, Justice.

Appellant owns and resides upon a 134 acre farm about twelve miles northwest of Abilene in Taylor County, on which appellee, West Central Drilling Company, owns and operates a producing oil and gas lease. There are two producing wells on said lease, but we are here concerned only with Well No. 2. Said farm is part in cultivation and part in grass. A roadway runs through the farm from north to south and said well is on the west side of said road. Each of said wells are high pressure wells and each produces from two pays. Each was equipped with two master gates to regulate and control the flow of oil and gas from the respective depths. Also, on the west side of the road was a battery of storage tanks, a separation and gas escape line, pipe line, engine and other necessary equipment. The gas pipe line was partly over ground and partly underground and was equipped to regulate the pressure of gas passing from the separator to the open air.

The happening forming the basis for this suit occurred in the late afternoon of April 14, 1944. Appellant had plowed near said well No. 2 during the entire day, using a sulky plow powered by three horses and a mule. The employee of appellee West Central Drilling Co. in charge of actual operations was a Mr. R. D. Burton, who was not interested in said lease other than as an employee. On said occasion, the master gate controlling the flow from the greater depth of well No. 2 broke and the well immediately began to spray oil. From the evidence we learn that this involved a waste of oil, injury to the soil near the well and created a distinct fire hazard. As an emergency measure, the said Burton requested appellant to plow a

furrow around the well, which was done. They then took steps to enlarge the embankment, when Mr. Edgar Davis, a member of the firm of West Central Drilling Co. and a representative of defendant Core Laboratories, Inc., arrived and took charge. The new program was to install a new master gate and appellant was instructed to remove his team and plow to a safe distance and the automobiles were moved away. All parties were cognizant of the fact that this matter of installing the new master gate created a new hazard. Appellant immediately drove to the road, a distance of about 120 feet, followed by Burton, appellant, then driving south, and Burton returned to said separator and released the gas. This was followed by oily looking smoke and a noise, the extent of which was a matter on which the witnesses did not agree. The team ran away and appellant was thrown from his seat on the plow, receiving serious and probably permanent injuries, for which he sued.

We may here state that defendant Core Laboratories, Inc., was not interested in said lease, but was making a routine pressure test of the wells under regulations of the Railroad Commission, but was made a defendant on the theory that it might have been in control of said well at the time the accident occurred. However, at the conclusion of the evidence, it was dismissed from the case and no complaint is made as to such action of the court, which action of the court we affirm.

Appellee West Central Drilling Company pleaded various defenses, including (a) that the escape of said gas was not the cause of the team running away, but that it was caused by the negligence of plaintiff in not having his said plow equipped with a brake and drag; (b) that when plaintiff drove upon said hard surfaced road, plaintiff lost control of said plow, which caused the double trees to strike the hocks of the team and which was a proximate cause of the runaway; (c) that plaintiff was an emergency employee and his injuries, therefore, compensable under the Workmen's Compensation Law; (d) and in the alternative, that plaintiff was a fellow employee of Burton and without recourse as against appellee.

The case was submitted to the jury on special issues, the first nine of which affirmatively presented plaintiff's theory of the case. Said issues were all answered favorably to appellant, the jury finding that the employee Burton prematurely released said gas; that such releasing of said gas before appellant had time to get his team a sufficient distance from the premises and the noise incident thereto frightened said team, causing the runaway; that same was negligence and a proximate cause of the injury. The succeeding seven issues related to the alleged contributory negligence of appellant in not having said plow equipped with a brake or drag, and in driving same upon said roadway with the blade lifted. The answers convicted appellant of contributory negligence in the matters mentioned, and that same was a proximate or contributory cause of the injury. Answers to subsequent issues were for $4,000 damages and $678.40 medical and hospital fees. Upon the answers by the jury to said issues, the court rendered judgment for appellee.

In appellant's motion for new trial, several acts of misconduct by the jury were alleged: (a) That during their deliberations, one of the jurors, who claimed to have had twenty-years' experience in oil field work, explained to the jury the workings of an oil production system with particular reference to a master gate, pipes, tanks, separator and release control valves, and stated his opinion to the effect that the noise coming from the release of said control valve could not possibly have scared appellant's team; (b) that there was a discussion by the jury as to the amount of money appellant was getting from said oil wells; (c) that the jurors did not answer the special issues in numerical order, but skipped about; (d) that there was a discussion by the jurors as to an alleged attempt to place an undue censure on the employee Burton, who had prematurely released said gas, which discussion caused the jury to answer the issue convicting Burton of negligence and then go to other issues and convict appellant of contributory negligence to balance up the negligence of the parties. Appellant contends that the aforesaid matters constituted serious misconduct on the part of the jury and were calculated to and

probably did influence the findings as to contributory negligence by appellant; that the trial court should have granted a new trial, and his refusal to do so constitutes reversible error.

The applicable rule is No. 327, Rules of Civil Procedure, which reads as follows:

"Where the ground of the motion is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury or that they received other testimony, the court shall hear evidence thereof from the jury or others in open court, and may grant a new trial if such misconduct proved, or the testimony received, or the communication made, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party."

█ The source of this rule is Article 2234, Revised Civil Statutes, and seems to have effected a change in the burden of proof. It will be noted that discretion to grant or deny a new trial is still lodged in the trial court as indicated by the word "may"; that the alleged misconduct must be "material," and it must reasonably appear from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to appellant.

█ Contributory negligence by the plaintiff, if established, provides an absolute defense to the defendant. 30 Tex.Jur. p. 657, sec. 13; Andrews v. Mynier, Tex.Civ. App., 190 S.W. 1164; Farrand v. Houston & T. C. R. Co., Tex.Civ.App., 205 S.W. 845. So, in this appeal, unless it reasonably appears that the misconduct alleged probably influenced the answers to the issues as to appellant's contributory negligence, the trial court must be sustained in denying a new trial. From the evidence of three of said jurors on hearing of the motion for new trial, and the admission of appellee's attorney that all the jurors would testify substantially as did the three, we think it was established that there was jury misconduct during their deliberations, the extent and effect of which will be discussed later in this opinion. There are certain inhibited acts that extend to all cases and material here. It is too elementary to require citation of authorities that a jury may not receive evidence from one of the jurors. Further, a juror may not set himself up as an expert on the matter involved and undertake to influence the verdict in that particular. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028; Maryland Casualty Co. v. Hearks, Tex.Sup., 190 S.W. 2d 62. The jury may not go beyond the admitted testimony and discuss and give weight to matters not in evidence, such as attorney's fees, pensions, etc., which misconduct may or may not justify reversal of the case. See Debes v. Greenstone, Tex. Civ.App., 260 S.W. 211, 213; Gillette Motor Transport Co. v. Whitfield, Tex.Civ. App., 160 S.W.2d 290. When jury misconduct has been established, the question of probable injury becomes one of law for the courts. Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462.

It may be helpful to review some of the more recent cases having a similarity to the one under review. Closely paralleling it is that of Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028, the opinion by Judge Taylor of the Commission of Appeals and adopted by the Supreme Court. That suit grew out of a collision of an ambulance belonging to Akers with a passenger automobile driven by Mrs. Epperson. The jury found that the driver of the ambulance was guilty of negligence in driving at an excessive rate of speed, which was the proximate cause of the collision, and the trial court denied Akers a recovery. On appeal the Court of Civil Appeals at San Antonio in a majority opinion, 172 S.W.2d 512, Chief Justice Smith dissenting, sustained the trial court whereupon said Court of Civil Appeals certified to the Supreme Court a material question of law as to whether the majority erred in overruling plaintiff's point that a juror was guilty of misconduct in his statement to the jury as to the speed at which the ambulance was being driven. It was in evidence on the trial that immediately preceding the collision, said ambulance skidded from twenty-five to twenty-eight feet on the dry street. Some pressure had been applied to the brakes before a collision became in-

evitable. The jury exonerated the defendant, Mrs. Epperson, from negligence. The specific misconduct alleged was on the part of the juror Boswell, who was an automobile mechanic and operator of a filling station, and who told the jury during their deliberations that he was familiar with skid marks of automobiles, and that, in his opinion and based upon the evidence, said ambulance must have been traveling at a speed of at least forty or more miles per hour. The judgment was sustained by the Supreme Court.

In the case of Inglett v. Commercial Standard Insurance Co., 171 S.W.2d 914, this court held that where the issues were answered favorably to plaintiff, he could not complain of the alleged misconduct of a juror in discrediting a witness on the stand.

 From an examination of the adjudicated cases we find that certain rules of law have been deduced relating to jury misconduct, but there is considerable divergence in the application of the law to the facts. Some of the cases were tried under the old rules, where a new trial was granted if there was a reasonable doubt as to whether injury resulted to the complaining party, whereas, under the new rule the burden is placed upon the complaining party to show probable injury. In the hearing on the motion for new trial for jury misconduct, the misconduct must be material and the evidence on the trial and the record as a whole are to be considered. Keeping in mind the rule that contributory negligence, when established, provides a complete defense, and that where both parties are guilty of negligence, neither may recover (Schoelkopf Saddlery v. Crawley, Tex.Civ.App., 203 S.W. 1172), the case under review must be affirmed, unless it "reasonably appears" that the misconduct alleged influenced the jury in its finding that appellant was guilty of contributory negligence, and that such was a proximate cause of the injury.

 In the first assignment of error in the motion for new trial, complaint is made as to explanation of the workings of an oil producing system by the juror Hooker, who claimed to have had some twenty years experience in the oil business. The basic facts as to this particular system were in evidence on the trial of the case, but said juror gave the jury a more detailed description of same from pictures and maps admitted in evidence. He did not recount any specific experience or demonstration or test outside the record, nor did he specifically set himself up as an expert, other than his long experience. After such explanation, and in particular describing the operation and working of the gas control valve between the separator and master gate, he stated as his opinion that the gas, when released, would have made but little, if any, noise. However, the jury found that said escaping gas did make a noise, frightened appellant's team, causing it to run away and was a proximate cause of the injury.

In the workman's compensation case of Maryland Casualty Co. v. Hearks, Tex. Sup., 190 S.W.2d 62, 63, the opinion by Chief Justice Alexander, there was a question as to whether the plaintiff Hearks lost his right eye in the course of his employment, or prior thereto. Several physicians testified, but they were not in harmony as to the matter. The company physician testified that when he examined Hearks for employment, he used a chart in testing his eyes. When Hearks was asked if he could read certain letters at a certain distance and answered that he could not, the doctor wrote "blind" as to his right eye. In the jury room there was a discussion as to whether blindness in one eye could be determined from such a test, and on motion for new trial, this was alleged to be jury misconduct. Chief Justice Alexander held that it was not misconduct, but a legitimate discussion of the matters in evidence. It is true that in said case no juror claimed to have had long experience in the testing of eyes by means of charts, and no experiences or other tests were related, but there is some similarity to the case under review. We quote from said discussion the following significant holdings:

"Under the findings of the trial court, we must resolve all conflicts in the evidence in favor of the validity of the verdict. It will be noted that the testimony given upon the motion for new trial is

very vague as to what was discussed. Certainly there was no proof that any juror claimed to possess expert knowledge on the subject matter under discussion by the jury, nor was it established that any juror imparted to the jury his personal experience in any matter similar to that under discussion by the jury. When all conflicts in the testimony are resolved in favor of the verdict, it will be found that the statements made by the jurors amounted to nothing more than a layman's discussion of the weight to be given to the evidence before the jury. It was the mere assertion by the juror that in the light of his ordinary experience he did not believe that the test made by the examining physician at the time the employee went to work for the employer was sufficient to determine whether or not the employee was blind in one eye. This was legitimate.

"Jurors in weighing the evidence before them have a right to use their common knowledge and experience in life. If the opinions of the experts as given in the evidence do not comport with the jurors' ideas of sound logic, the jurors have a right to say so. Otherwise, there could not be a free discussion of the evidence in the jury room. Lewis v. Halbert, Tex.Civ.App., 67 S.W.2d 430, par. 7; Blue Diamond Motor Bus Co. v. Hale, Tex.Civ.App., 69 S.W.2d 228, par. 5, writ dismissed; Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A. L.R. 1028; 41 Tex.Jur. 852. This assignment is overruled."

In the very recent case of Stewart v. Humble Oil & Refining Co., 193 S.W.2d 259, 261, a jury misconduct case in which the operator of a telephone company was not clearly established, and which matter was discussed by the jury, the Court of Civil Appeals said:

"The trial court's action in overruling the motion for new trial is tantamount to a finding of fact that it was the telephone system operator by Humble that was discussed, for the record is entirely absent that the telephone line was operated by any other concern. The action of the trial court is also tantamount to the conclusion of law, that upon a consideration of the case as a whole plaintiff had not shown in-

jury probably resulted to him. In either event, the action of the trial court is sustained. Rule 327, Texas Rules of Civil Procedure, supra; Allala v. A. N. Tandy & Sons, 127 Tex. 148, 92 S.W.2d 227; St. Louis, B. & M. R. Co. v. Cole, Tex.Com. App., 14 S.W.2d 1024; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462, 464."

■ There may be some doubt as to whether the explanations of the workings of an oil producing system by the juror Hooker constituted new evidence. His explanation was based upon pictures, maps and charts in evidence as hereinabove set out. But if jury misconduct in this particular be conceded, appellant is in no position to complain, since the holding by this court in Inglett v. Commercial Standard Insurance Co., supra, would be equally applicable here. The actual workings of the oil producing system was of slight materiality, except possibly the juror's statement as to noise by escaping gas, which statement was repudiated by the jury. Furthermore, we can see no relationship of said juror's said explanation to the finding of contributory negligence, since said finding of negligence was based upon undisputed evidence that appellant's plow was equipped with neither brake nor drag. We conclude that probable injury is not shown by the alleged misconduct of the said juror.

■ Appellant complains that during the jury's deliberations they discussed and tried to figure out in dollars and cents the amount of money appellant was receiving from his oil wells. On the hearing on the motion for new trial, it was elicited that some of the jurors mentioned the matter and one juror testified that he attempted to calculate the said income, but failed to do so correctly. Another juror testified that he "told them it was not any of our damn business how much oil there was or how much money the man had; that did not have anything to do with it." We may state that the allowable production from said wells was in evidence, as was also the oil and gas lease. We conclude that this alleged misconduct by the jury did not cause a probable injury to appellant.

■ Appellant's third assignment is as follows:

"The jury in answering the special issues did not answer them in numerical order, but skipped about; and, said jurors after certain issues were answered, which convicted plaintiff of contributory negligence, were then willing to answer the plaintiff's special issues, thereby causing other jurors to agree to a verdict the effect of which they did not intend."

It was in evidence that said issues were not answered in numerical order. But in the case of Debes v. Greenstone, Tex.Civ. App., 260 S.W. 211, 213, this identical question was before the court, and it was held:

"The mere order in which questions are submitted is an immaterial matter, and likewise the order in which a jury may answer the questions is an immaterial inquiry. They may answer the last first, or the first last—just as they choose. That is for them to decide. The parties to the litigation are interested only to the extent that each question must be answered on its merits, and that no material question must be answered in relation to its effect on the judgment of the court to be entered on their answers."

So, unless the jury in answering the issues took into consideration the effect of such answers on the judgment to be entered on their answers, the assignment must fail. We find no evidence on the motion for new trial to justify a holding that "after certain issues were answered, which convicted plaintiff of contributory negligence, some jurors were then willing to answer the plaintiff's special issues, thereby causing other jurors to agree to a verdict, the effect of which they did not intend." In the absence of supporting evidence, it would be only a surmise. We cannot assume misconduct by the jury. We think that if there should be a question about it, such question should be resolved in favor of the verdict. But we may here state that there was ample and uncontroverted evidence before the jury to support its finding as to contributory negligence.

One juror testified that there was some discussion to the effect that the employee and witness Burton was being made the "goat." But Burton was not a party to the suit. He was convicted, however, of negligence by the jury.

The contention of appellee that appellant was an emergency employee, or, in the alternative, a fellow employee, were, we think, questions of fact, which were not submitted to the jury, and we pretermit any discussion of same.

From the evidence on the trial and upon motion for new trial, and from the record as a whole, we have concluded that probable injury to appellant from the alleged jury misconduct is not shown.

The judgment of the trial court is affirmed.