**KELLEY et al. v. DICKSON et al.**

No. 5763.

Court of Civil Appeals of Texas. Amarillo.

Feb. 24, 1947.

Rehearing Denied March 24, 1947.

McWhorter, Howard & Cobb, of Lubbock, for appellants.

Campbell & Adams, of Lubbock, for appellees.

LUMPKIN, Justice.

This is a second appeal of this case, in which the appellees, C. L Dickson and J. B. Walker, sued appellants, Wayne Kelley and his mother, Rosa Kelley, a widow, to recover a five per cent commission on $30,000, alleged to be due them by virtue of appellants' efforts in the sale of 334 acres of land located in Hockley County, Texas. The former opinion is reported in 193 S.W. 2d 256.

The action was predicated upon a written contract or listing executed by Wayne Kelley, in which he designated C. L Dickson as his agent to sell the land. It was stipulated by the parties that the appellants had conveyed to Dene R. Headstream, for a consideration of $30,000, the 334 acres of land described in the agreement.

In the trial, the appellant Wayne Kelley admitted that the land described in the stipulation was the land referred to in the contract and that the appellee Walker had negotiated with Headstream prior to the sale. The evidence on the trial disclosed that the sale was made by the Kelleys' executing a deed to one T. A. Mitchell, who, at the same time and place, executed his deed to Headstream. Mitchell gained nothing from the transaction. The Kelleys prevailed in the former trial. This court reversed the judgment and held that the description of the land listed by Wayne Kelley with C. L. Dickson was sufficient to maintain his suit for his five per cent commission, and this court further found that Dickson violated no relationship with the Kelleys by his employment of Walker as a sub-agent to assist him in selling the property. The second trial, as the first, was to a jury.

Appellants first contend that the trial court erred in overruling their motion for judgment since the evidence showed and the jury so found, that the written listing executed by Wayne Kelley to C. L. Dickson was given prior to the time that a partnership of C. L. Dickson, J. F. Peterson and one O'Neal was dissolved. The date of the listing was March 20, 1944. Peterson testi-

fied that the firm of Dickson, Peterson and O'Neal, designated as the C. L. Dickson Agency, was dissolved in June, 1944. The appellants contend that since the listing contract was made during the life of the partnership the suit should have been in the names of the partners comprising the firm. Dickson testified that the listing was to him alone and not to the firm of Dickson, Peterson and O'Neal; that Peterson and O'Neal were associated with him for a short time prior to the Kelleys' contract and that they operated out of the office of the C. L. Dickson Agency on a percentage basis. Peterson emphatically testified that he did not claim any interest in the commission sued for by appellees; that he played no part in procuring the Kelleys' listing, and that when he left the agency he left the listing with the firm. As to O'Neal, the evidence shows that he neither directly nor indirectly participated in any of the transactions involved in this case. The evidence further discloses that Walker, working under an agreement with Dickson, located the purchaser, Headstream, in the summer or fall of 1944 and negotiated with him concerning the sale during December of that year and the early part of 1945. The land was sold May 12, 1945.

The evidence clearly shows that neither Peterson nor O'Neal had any claim against the Kelleys. Any interest either of them had in the Kelleys' contract was left with Dickson when the partnership was dissolved. Each retiring partner parted with his interest in the firm's assets. It is admitted that when the commission was earned there was no partnership. The property was not sold until May 12, 1945; the partnership was dissolved in June, 1944.

Appellants next contend that in view of the required provisions of the Real Estate Dealers License Act, Article 6573a, Vernon's Annotated Civil Statutes, the court erred in rendering judgment in favor of appellees, because the jury found that Dickson did not display in his office or in the office of the C. L. Dickson Agency the real estate salesman's license or the real estate dealer's license issued by the Secretary of State to J. B. Walker, and for the further reason that the jury found that Walker, as such dealer or salesman, did

not designate C. L. Dickson or the C. L. Dickson Agency as his employer.

The emergency clause of this Act recites that the purpose of the Statute is to provide a more effective means of preventing fraud in the sale of real estate. Acts 1939, p. 576, § 24. Section 22 was intended to protect property owners against the unfounded claims of real estate brokers. As announced by the Supreme Court in Warren v. White, 143 Tex. 407, 185 S.W.2d 718, 719: "It was not intended to apply to agreements between brokers to co-operate in making sales for a share of the commission". Walker was not an employee of Dickson. Many of the sales he made had nothing to do with C. L. Dickson or the C. L. Dickson Agency. He, so the evidence shows, on many occasions advertised property for sale. He advertised the Kelley property for sale. This advertisement was made separate and apart from the C. L. Dickson Agency. Walker was an independent real estate broker, holding a real estate dealer's license. He was not a salesman in the sense that he did not hold a real estate salesman's license. In effect, and this is supported by the evidence deduced, he entered into an agreement with Dickson to sell the Kelleys' property for a share of the commission. He had complied with all the requirements of the Real Estate Dealers License Act, and in our opinion the fact that he did not display in the office of the C. L. Dickson Agency his real estate dealer's license is of no material consequence.

In their amended motion for a new trial, appellants contended that the jury was guilty of misconduct in arriving at a verdict to such an extent as materially to taint the verdict finally submitted. Several of the jurors were summoned to testify in support of appellants' motion. It is the contention of appellants that the evidence established that the jury, or some of them, upon retiring to consider their verdict, agreed to abide by the will of the majority in answering the issues submitted. In their motion, appellants speak of the establishment of this majority rule as a tacit consent on the part of each juror.

The trial court, after hearing the evidence on the question of jury misconduct, overruled Kelleys' motion for a new trial.

There is some conflict in the jurors' testimony. A majority of them stated that each special issue was read to them by the foreman; that each of them voted "Yes" or "No" as to each issue; that they argued some of their answers; that no written ballot was taken; that the vote was by voice —sometimes by a show of hands; that each stated in open court the verdict returned was his verdict. The testimony of Eric Posey, a juror, to some extent bears out appellants' contention of a tacit agreement. He states that after the jury assembled in the jury room they agreed to abide by the will of the majority, though later he states in his testimony that there was no overt understanding or agreement among the jurors; that it "seemed to be the attitude that they [the jurors] would let the majority rule".

From reviewing the complete testimony of the jurors, it appears there is ample testimony to support the findings of the trial court. The evidence about which the appellants complain reveals no more than the mental process through which each juror's mind went in reaching his conclusion. In the absence of overt acts of misconduct, it is not permissible to probe the jurors' minds or supervise the manner in which they arrived at their verdict. Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 156 A.L.R. 1028. The evidence reveals no overt act or agreement, or understanding, or collusion whereby the members of the jury entered into an agreement and bound themselves in advance to answer each of the special issues in a manner dictated by the majority. Casstevens v. Texas & P. R. Co., 119 Tex. 456, 32 S.W.2d 637, 73 A.L.R. 89. Under Rule 327 of the Texas Rules of Civil Procedure the burden is upon the party complaining of jury misconduct to prove by a preponderance of the evidence that such misconduct occurred and that such misconduct resulted in injury to him. The trial court may, in its discretion, grant a new trial if it appears that there was reasonable probability of injury to such party, though the injury be not definitely proved. If there is any conflict as to the question of misconduct, the decision of the trial court is final. It is presumed that the trial court found no misconduct. Its decision on this question of fact is final. Gillette Motor Transport Co. v. Whitfield, Tex.Civ.App., 160 S.W.2d 290; Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462; Menefee v. Gulf, C. & S. F. Ry. Co., Tex.Civ.App., 181 S.W.2d 287; Hudson v. West Central Drilling Co., Inc., Tex.Civ.App., 195 S.W.2d 387.

We have considered all of appellants' contentions, and finding no reversible error we affirm the judgment of the trial court.